# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-41258

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ESTEVAN OCHOA-GOMEZ,

Defendant – Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

January 28, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before PRADO, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:

Estevan Ochoa–Gomez (Defendant) challenges a two-level adjustment that the district court applied to his sentence for having exercised an aggravating role in the convicted offense. Because the record plausibly supports a finding that Defendant exercised management responsibility over the property, assets, or activities of a criminal organization—actions which our Court, sitting *en banc*, has held may warrant an aggravating role adjustment pursuant to § 3B1.1(c) of the United States Sentencing Guidelines—we AFFIRM the district court's judgment.

No. 13-41258

## I.

This case arises out of a drug operation in which Defendant and others transported crystal methamphetamine from Mexico into the United States. According to the Presentence Report (PSR), the transactions at issue began in early 2012, but Defendant did not become involved until after the first two transactions were complete. Initially, his co-defendant, Raymundo Jose Cabrera–Parades (Cabrera), and Cosme Nunez–Aviles (Nunez), an unindicted co-conspirator, met with an undercover officer in April 2012 to discuss the details for delivering crystal methamphetamine to a buyer in Atlanta, Georgia. At a second meeting between these individuals, Nunez told the officer that the delivery to Atlanta would be a test run and that the organization that Nunez and Cabrera were a part of had "an unlimited supply of crystal methamphetamine and marijuana." He also told the officer that he knew of two other individuals who wanted to transport large quantities of marijuana to Houston and Dallas, Texas, one of whom was later identified as "Estevan" (Defendant's first name). Nunez and Cabrera, along with an unidentified, unindicted co-conspirator, completed the first transaction with the undercover officer.

Over the subsequent weeks, Cabrera, accompanied by Nunez and other co-conspirators, met with the undercover officer to discuss additional deliveries to cities in the United States. It was not until June 2012, after Nunez elected to remain in Mexico and a fourth co-conspirator was arrested by the investigating officers, that Defendant began participating in the negotiations alongside Cabrera. Defendant and Cabrera met with the undercover officer to negotiate the delivery of specific quantities of crystal methamphetamine to Houston, Texas, and marijuana to a location in Alabama. They both attended subsequent meetings with the officer but no transactions materialized.

2

No. 13-41258

In October 2012, Cabrera again spoke with the undercover officer about a potential delivery. Defendant did not attend the meeting because he was "busy wrapping the crystal methamphetamine." Cabrera represented to the officer that he and Defendant had 12 kilograms of crystal methamphetamine that needed to be delivered, 8 kilograms of which belonged to Defendant and Cabrera. Later, Cabrera and Defendant met the officer in a parking lot to exchange the drugs. Cabrera arrived first, and after talking to the officer for a short while, Defendant arrived in a separate vehicle with the drugs. They made the exchange and then left the scene in their separate vehicles. The next day, Cabrera, without Defendant, met with the undercover officer to discuss the final details for the delivery and, upon being asked, explained that he and Defendant had wrapped the drugs themselves. A few days later, Cabrera and Defendant discussed another potential delivery with the undercover officer. After the meeting concluded, agents from the Drug Enforcement Agency arrested both Cabrera and Defendant.

In light of the above facts, the PSR describes Defendant's role in the conspiracy as "helping facilitate the transportation of narcotics." Based on the testimony of one of the agents:

> [Defendant was] very knowledgeable in the operations within the organization. Both [Cabrera] and [Defendant] knew when narcotics would be imported and released to their possession. Further, they were responsible for storing the narcotics prior to coordinating the transportation further north. In addition, they would obtain the funds that were used to hire/pay the transporters.

According to the PSR, Defendant wrapped and delivered the crystal methamphetamine given to the undercover officer at the October 2012 meeting. He also participated in negotiating the ultimate delivery of those drugs.

3

No. 13-41258

Based on these facts, the government charged Defendant with three counts of drug-related offenses. Pursuant to a plea agreement, Defendant pleaded guilty to the third count, possession with intent to distribute 500 grams or more of crystal methamphetamine, under 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii) and 18 U.S.C. § 2. The Sentencing Guideline corresponding with Defendant's crime is U.S.S.G. § 2D1.1(a)(5). Under this Guideline, based on the amount and quality of the crystal methamphetamine involved, Defendant's base offense level was 38. In addition, the probation officer recommended a four-level adjustment pursuant to § 3B1.1(a) for Defendant's aggravating role in the offense. Defendant objected to the facts in the PSR and the adjustment on the basis that the PSR does not support a finding that he "exercised a leadership or managerial role." The district court thought that "some adjustment should be made" but, because Defendant's role in the offense was "not quite as bad" as Cabrera's, the court applied only a two-level adjustment pursuant to § 3B1.1(c). The district court indicated that because Defendant had duties (wrapping and driving) typically assigned to people "at the top" and participated in a transaction that was coordinated over a long period of time, the adjustment was warranted. The district court did not specify which of the four roles in § 3B1.1(c) ("organizer, leader, manager, or supervisor") Defendant had exercised.

The district court also applied a two-level enhancement (not at issue in this appeal) pursuant to U.S.S.G. § 2D1.4(b)(5) for importing the crystal methamphetamine from Mexico and a three-level reduction for acceptance of responsibility. Based on all of the adjustments, Defendant's total offense level was 39. Given his criminal history category of I, the recommended sentencing range under the Guidelines was 262–327 months. The district court sentenced Defendant to 262 months' imprisonment. Without the two-level adjustment,

Defendant's offense level would have been 37, corresponding to a Guidelines range of 210–262 months.  Defendant appealed his sentence on the basis that the district court clearly erred in determining that he exercised an aggravating role in the offense and imposing the related two-level adjustment.

## II.

District courts, while not bound by the Sentencing Guidelines, "must consult the Guidelines and take them into account when sentencing," and appellate courts "review sentencing decisions for unreasonableness." *United States v. Booker*, 543 U.S. 220, 260 (2006).  "[A] district court's interpretation or application of the Sentencing Guidelines is reviewed *de novo*, while its factual findings are reviewed for clear error." *United States v. Hernandez–Galvan*, 632 F.3d 192, 196 (5th Cir. 2011) (internal quotation marks omitted) (citing *United States v. Turner*, 319 F.3d 716, 725 (5th Cir.2003)).

Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. § 3B1.1(c) is a finding of fact reviewed for clear error.  *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006); *see also United States v. Akins*, 746 F.3d 590, 609 (5th Cir. 2014) (conducting clear error review for a factual finding under § 3B1.1(b)).  A factual finding that is plausible based on the record as a whole is not clearly erroneous.  *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013).  In making the factual determinations pursuant to the Sentencing Guidelines, a district court may base its findings on "any information that has sufficient indicia of reliability to support its probable accuracy." *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006) (internal quotation marks omitted).  A PSR generally bears sufficient indicia of reliability for this purpose. *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012).

No. 13-41258

### III.

The Sentencing Guidelines instruct a district court to increase a defendant's offense level if he played an aggravating role in the offense at issue. U.S.S.G. § 3B1.1. The guideline recommends three different adjustment levels depending on the scope of the criminal activity and the degree of control exercised by a defendant. U.S.S.G. § 3B1.1(a)–(c). If the criminal activity involves fewer than five participants and is not otherwise extensive, then the district court should increase a defendant's sentence by two levels if he exercised any of the four aggravating roles listed—organizer, leader, manager, or supervisor. U.S.S.G. § 3B1.1(c)

The application notes accompanying a Guideline generally bind federal courts unless they are inconsistent with the text of the Guideline. *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455 (5th Cir. 2005); *United States v. Ho*, 311 F.3d 589, 610 (5th Cir. 2002) (citing *Stinson v. United States*, 508 U.S. 36 (1993)). To warrant an adjustment under any of the three subsections, the application notes for § 3B1.1 state that the defendant "must" be an organizer, leader, manager, or supervisor "of one or more other participants."[1] U.S.S.G. § 3B1.1, cmt. n.2. Moreover, the notes advise that an *upward departure*[2] may

---

[1] A "participant" includes anyone "who is criminally responsible for the commission of the offense." U.S.S.G. § 3B1.1, cmt. n.1. This can include individuals not convicted, but excludes undercover officers. *Id.*

[2] A district court may depart from a Guideline-specified sentence only when it finds "an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the [G]uidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). There are two different kinds of departures in the Sentencing Guidelines:

> "The first involves instances in which the [G]uidelines provide specific guidance for departure by analogy or by other numerical or non-numerical suggestions. The Commission intends such suggestions as policy guidance for the courts. The Commission expects that most departures will reflect the

6

be warranted for a defendant who did not exercise control over another participant but "nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1, cmt. n.2. Our court, sitting *en banc*, has construed Note 2 to allow application of an *adjustment*, even where a defendant did not exercise control over another participant, if he exercised management responsibility over the property, assets, or activities of a criminal organization. *United States v. Delgado*, 672 F.3d 320, 345 (5th Cir. 2012) (en banc), *cert. denied*, 133 S. Ct. 525 (2012).[3] The court in *Delgado* explained that because the defendant "control[led] a large quantity of drugs and the truck used to transport them," and "made arrangements for their transportation and delivery," the district court's finding was not clearly erroneous. *Id.* According to *Delgado*, a § 3B1.1 adjustment may be based on *either* control over people or management of assets. *Id.* We have followed and applied *Delgado*'s interpretation of § 3B1.1, cmt. n.2. *See*

suggestions and that the courts of appeals may prove more likely to find departures "unreasonable" where they fall outside suggested levels."

U.S.S.G. Ch.1, Pt.A, Subpt. 1 at 7 (2014). The second type rests "on grounds not mentioned in the [G]uidelines." *Id.* Note 2 contains the first type, recommending a departure where a defendant "exercised management responsibility over the property, assets, or activities of a criminal organization." U.S.S.G. § 3B1.1, cmt. n.2.

[3] Defendant did not cover the asset management issue in his initial brief or file a reply brief responding to the government's arguments on this point. In its brief, the government cited *Delgado* regarding the standard of review on appeal, but did not discuss its interpretation of § 3B1.1. The government did, however, argue that an adjustment may still be applied where a defendant "assumes a supervisory role, even in the absence of specific testimony that the defendant supervised a specific person on a specific date or in a specific task." For support, it cited a published case that broadly found an aggravating role and an unpublished case released before *Delgado* that relied on evidence of asset management to affirm a sentence that included a § 3B1.1(c) adjustment. *See United States v. Njoku*, 737 F.3d 55, 77–78 (5th Cir. 2013); *United States v. Huerta–Ortega*, 442 F. App'x 953, 955 (5th Cir. 2011).

*United States v. St. Junius*, 739 F.3d 193, 208–09 (5th Cir. 2013) (holding that the district court's finding of an aggravating role was plausibly supported by evidence that the defendant signed important documents, including paychecks, and sent correspondence as the owner of an organization engaged in health care fraud).  Likewise, we are bound by *Delgado*.  *See United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014) (explaining that under our rules, *en banc* precedent and earlier panel holdings bind future panels of our court).

Therefore, the question before us is whether the record plausibly supports the district court's finding that Defendant exercised an aggravating role in his offense either by exercising control over another participant or exercising management responsibility over property, assets, or activities. U.S.S.G. § 3B1.1(c), cmt. n.2; *see Delgado*, 672 F.3d at 344–45.  Having reviewed the evidence in the PSR and cases applying § 3B1.1, we are persuaded that the district court did not err in applying the two-level increase.  Even assuming *arguendo* that Defendant is correct that the record lacks any evidence that he exercised control over another participant in the offense, it does contain evidence that he "exercised management responsibility over the property, assets, or activities of [the] criminal organization."

The PSR describes Defendant's role as: "helping facilitate the transportation of narcotics"; "deliver[ing] the 15.4 kilograms of methamphetamine to the [undercover officer]"; "participating in the wrapping of his and [Cabrera's] 8 kilograms of crystal methamphetamine"; and jointly with Cabrera "meeting the [undercover officer] at a local restaurant" for the exchange.   Later in the report, Defendant's role is also described as: "coordinating the transportation of narcotics"; "negotiat[ing] the price for the transportation of narcotics"; "deliver[ing] the narcotics"; and providing 8

kilograms of crystal methamphetamine jointly owned by Defendant and Cabrera.

At the sentencing hearing, the district court concluded that these are tasks typically performed by those "at the top" in a narcotics organization. The district court also expressed concern that Defendant's involvement extended over a number of months and that he had the important responsibility of wrapping and then delivering the crystal methamphetamine to the undercover officer at the October 2012 exchange. Like the defendants in *Delgado* and *St. Junius*, Defendant played an integral role in the transaction at issue and exercised management responsibility over the property, assets, and activities of the criminal organization. He assisted in negotiations, contributed eight kilograms of jointly-owned crystal methamphetamine, stored and packaged the drugs, delivered them to the undercover officer, and indicated a willingness to supply more drugs in the future. Based on this evidence, the district court could plausibly determine that Defendant "exercised management responsibility over the property, assets, or activities of a criminal organization," which, in turn, supports a finding that Defendant exercised an aggravating role pursuant to § 3B1.1(c).

**IV.**

For the reasons stated above, we AFFIRM.

EDWARD C. PRADO, Circuit Judge, joined by ELROD, Circuit Judge, concurring.

The opinion correctly applies controlling precedent from this circuit and I concur. However, an apparent error has crept into the controlling authority, *United States v. Delgado*, 672 F.3d 320 (5th Cir. 2012) (en banc). *Delgado* appears to have conflated an "adjustment" and an "upward departure" for purposes of Application Note 2 to United States Sentencing Guidelines (U.S.S.G.) § 3B1.1. *See* 672 F.3d at 344–45. This issue merits *en banc* review.

Following *Delgado*, Fifth Circuit precedent expressly permits a district court to apply a two-level sentence adjustment under § 3B1.1(c) based on evidence that the defendant "exercised management responsibility over the property, assets, or activities of a criminal organization." *See id.* (quoting U.S.S.G. § 3B1.1 cmt. n.2) (internal quotation marks omitted). This appears to contrast with the plain text of Application Note 2,[1] which requires evidence of supervising or managing *other participants* to support the adjustment.[2] *See* U.S.S.G. § 3B1.1 cmt. n.2 ("To qualify for an adjustment under this section, the defendant *must* have been the organizer, leader, manager, or supervisor of one or more other *participants*." (emphases added)). Application Note 2

---

[1] Application Note text bears "controlling weight" unless it is "plainly erroneous or inconsistent with the guidelines." *United States v. Urias–Escobar*, 281 F.3d 165, 167 (5th Cir. 2002).

[2] This apparent error is further illuminated by the history of § 3B1.1. The Guideline was amended in 1993 to include Note 2 in order to resolve a circuit split over the same interpretation at issue here: whether management of assets warranted an adjustment. U.S.S.G. app. C, amend. 500; *compare, e.g.*, *United States v. Carroll*, 893 F.2d 1502 (6th Cir. 1990) (requiring a degree of control over other participants), *United States v. Fuller*, 897 F.2d 1217 (1st Cir. 1990) (same), *United States v. Mares–Molina*, 913 F.2d 770 (9th Cir. 1990) (same), *and United States v. Fuentes*, 954 F.2d 151 (3d Cir. 1992) (same), *with United States v. Chambers*, 985 F.2d 1263 (4th Cir. 1992) (holding that exercising control over other participants is one factor among many that should be considered, not a requirement for applying the adjustment).

recommends only an *upward departure* in cases where the defendant managed the organization's property or activities. *See id.* ("An *upward departure* may be warranted, however, in the case of a defendant who . . . exercised management responsibility over the *property, assets, or activities* of a criminal organization." (emphases added)).

The distinction between an adjustment and a departure is not merely semantic: an adjustment affects the defendant's offense level and corresponding guideline range, *see* U.S.S.G. § 1.1(a), while a departure involves the "imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence," U.S.S.G. § 1.1 cmt. n.1(E). *See, e.g., United States v. Ramos–Paulino*, 488 F.3d 459, 464 (1st Cir. 2007) ("Although both may lead to similar outcomes, there is an important structural distinction between sentencing enhancements and sentencing departures."). Indeed, we initially joined the majority of circuits in holding that it is error for a district court to apply a § 3B1.1 adjustment, rather than a departure, when the evidence establishes the defendant's management or supervisory role over property or activities alone. *See United States v. Jobe*, 101 F.3d 1046, 1068 (5th Cir. 1996). In *Delgado*, we *sub silentio* abrogated *Jobe* and diverged from at least nine other circuits.[3]

---

[3] *See United States v. Ramos–Paulino*, 488 F.3d 459, 464 (1st Cir. 2007) ("[Application Note 2] makes it pellucid that the management of criminal activities (as opposed to the management of criminal actors) may ground an upward departure but not an upward role-in-the-offense adjustment."); *United States v. Patasnik*, 89 F.3d 63, 70 (2d Cir. 1996) (discussing Application Note 2 and its textual distinction between adjustments and departures); *United States v. Steffen*, 741 F.3d 411, 415 (4th Cir. 2013) ("[I]n order to qualify for the role *enhancement*, the government must present evidence that the defendant managed or supervised participants, as opposed to property . . . ." (emphasis added) (internal quotation marks omitted)); *United States v. Gort–Didonato*, 109 F.3d 318, 321 (6th Cir. 1997) ("Where the defendant exerts control over at least one participant in a supervisory, managerial, leadership, or organizational capacity, a sentence enhancement is required under § 3B1.1. Whereas, where a defendant does not exercise control over an individual but over property, assets, or activities, an upward departure may be warranted."); *United States v. Fones*, 51

No. 13-41258

Importantly, there is little to indicate that we intended this interpretation of the Guidelines. On its face, nothing in *Delgado* purports to overrule *Jobe* or create a circuit split, and its holding on the § 3B1.1 issue appears on the final page of a twenty-six page opinion. Nevertheless, we are bound by this ruling. *See United States v. St. Junius*, 739 F.3d 193, 208–09 (5th Cir. 2013) (citing *Delgado* and applying its interpretation of Application Note 2 to uphold an adjustment based solely on management of property, assets, or activities). Given that our precedent appears to conflict with the plain language of Application Note 2, *sub silentio* overruled *Jobe*, and places this circuit at odds with several other circuits, the issue merits *en banc* review.

---

F.3d 663, 668 (7th Cir. 1995) ("[A]s indicated by the note, the method of sentence enhancement varies depending upon exactly what the defendant has control over. . . . This note now requires that a defendant have control over at least one participant . . . in order to be subject to a sentencing enhancement under § 3B1.1."); *United States v. McFarlane*, 64 F.3d 1235, 1238 (8th Cir. 1995) ("[I]f McFarlane's sentence was to be increased, it would have to be by means of an upward departure as McFarlane 'did not organize, lead, manage, or supervise another participant, but [instead] exercised management responsibility over the property, assets, or activities of a criminal organization.'" (quoting U.S.S.G. app. C, amend. 500)); *United States v. Bonilla–Guizar*, 729 F.3d 1179, 1186 (9th Cir. 2013) ("[S]ome degree of control or organizational authority over *others* is required in order for section 3B1.1 to apply." (internal quotation marks omitted)); *United States v. Glover*, 179 F.3d 1300, 1303 (11th Cir. 1999) ("We now squarely decide that a section 3B1.1 enhancement cannot be based solely on a finding that a defendant managed the assets of a conspiracy. A finding involving just asset management may support only an upward departure."); *United States v. Graham*, 162 F.3d 1180, 1185 n.6 (D.C. Cir. 1998) ("An upward departure, as opposed to an adjustment, may be warranted for offenders who manage property, assets, or activities rather than people." (citing U.S.S.G. § 3B1.1 cmt. n.2)). *But see United States v. Parker*, 553 F.3d 1309, 1322 (10th Cir. 2009) (allowing the adjustment on either basis).