# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50159

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

     Plaintiff - Appellee

v.

ISAAC RAMOS,

     Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Isaac Ramos appeals his sentence following a guilty plea conviction for conspiracy to possess a controlled substance and possession with intent to distribute a controlled substance. He contends that the district court erred by applying a two-level aggravating role guideline enhancement under U.S.S.G. § 3B1.1(c). Because Ramos has not demonstrated clear error, we affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50159

I.

Ramos was charged for his role in a cocaine transaction with a Drug Enforcement Administration ("DEA") undercover agent. On July 24, 2017, Mariano Gamez arranged a cocaine sale with the undercover DEA agent by phone. Gamez confirmed that he could deliver three kilograms of cocaine that afternoon and they agreed to meet at the Sunland Park Mall. Gamez picked up Ramos and Jose Castillo from a Church's Chicken in El Paso before driving to the mall. At the meeting in the parking lot of the mall, the DEA agent observed the three kilograms of cocaine located in a gift bag inside the car and all three occupants of the car were arrested. When the vehicle was searched, law enforcement found a loaded firearm under the passenger seat of the car. According to the government, the gun belonged to Castillo. After his arrest, Gamez provided a statement. Gamez acknowledged communicating with the DEA undercover agent who had posed as a buyer of cocaine. He said he was supplied with three kilograms of cocaine by "Patitas," later identified as Ramos.

On August 16, 2017, Ramos was indicted for conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841 (Count One) and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841 (Count 2). Ramos pleaded guilty without a plea agreement.

In the initial PSR, the probation officer noted that there was insufficient information to determine whether a role adjustment was appropriate for Ramos:

> According to Gamez' statement to agents, he negotiated the cocaine deal with a DEA undercover agent while Ramos supplied the cocaine. There is no additional substantiated information to determine the role of Gamez and Ramos in this case. As such, an

2

No. 18-50159

adjustment for role, pursuant to USSG §3B1.1 and 2, could not be determined as to Gamez and Ramos.

Therefore, no role enhancement was added. In the initial PSR, the probation officer did recommend a two-level enhancement for possession of a dangerous weapon during the commission of the offense pursuant to U.S.S.G. § 2D1.1(b)(1). Ramos had only one criminal history point[1] and the enhancement for possession of a weapon made him ineligible for a safety-valve reduction under the Guidelines.[2] Without the application of the statutory minimum, Ramos's advisory guideline range was 57–71 months of imprisonment.[3] Because Ramos was ineligible for the safety-valve reduction, however, the statutory minimum of 5 years applied and Ramos's guideline range was 60–71 months.

Ramos did not object to the factual recitation in the initial PSR, but filed one objection to the two-level upward adjustment for possession of a firearm, pursuant to U.S.S.G. § 2D1.1(b)(1).[4] At the first sentencing hearing, the government agreed with Ramos's objection to the firearm enhancement.[5] The district court probed the parties: "So he is getting two breaks here. He is not getting [the firearm enhancement], and he didn't get an 851 enhancement as

---

[1] Ramos's criminal history point was for a 2013 conviction for possession with intent to distribute methamphetamine.

[2] U.S.S.G. § 5C1.2(a)(2). That subsection provides that the defendant is only eligible if "the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." *Id.*

[3] Ramos had a criminal history category of I and a total offense level of 25.

[4] In his written objection, Ramos noted that at Gamez's earlier sentencing hearing, the government had informed the court that Castillo claimed ownership of the gun and that Castillo told the government that Ramos did not know Castillo had a gun.

[5] The government stated: "Your Honor, the statement of Mr. Castillo was, is he brought the gun along. He, Mr. Castillo, owned the gun. And he said Mr. Ramos had no authority, control, ownership interest or anything along those lines. Mr. Ramos may have known about the gun. He may not have known about the gun. But Mr. Castillo did take responsibility for it. So that is the basis for my position, Judge."

part of the indictment. Right? . . . And he is the supplier of the 3 kilos and actually had offered 10 to begin with. That just doesn't make sense." The district court then held a sealed discussion at sidebar. During that sidebar, the government explained the structure of the drug transaction. The government stated that through a series of "debriefs," it learned that Ramos was a "broker"—he generally contacted a man named Estrada to supply cocaine, but because he was on bad terms with Estrada, instead contacted Castillo to supply the cocaine. The district court sustained the objection to the firearm enhancement, but then stated: "In fact, you know . . . he can still get the plus 2 for coordinating because the coordination does not take into consideration number of participants. So, in fact, I am going to recess this hearing, come back, because I want to research that." Again in open court, the district court stated:

> The objection to the plus 2 levels [sic] enhancement found on paragraph 20 . . . is sustained. . . . I find that that doesn't automatically make[] Mr. Ramos safety valve eligible because the facts stated on the PSR substantiate that the was a coordinator as he was involved with Co-defendant Gamez. He was involved with his supplier of the cocaine in setting up the transaction. . . . So that clearly takes Mr. Ramos out of the safety valve eligibility.

The sentencing hearing was reset. Probation revised the PSR, removing the firearm enhancement and adding a two-level aggravating role enhancement pursuant to U.S.S.G. § 3B1.1(c).[6]    In the revised PSR, the probation officer amended Paragraph 11—in contrast to the initial PSR's conclusion that "an

---

[6] The revised PSR stated: "Further, based on available information, Ramos is viewed as an organizer during these drug negotiations and a two-level upward adjustment for aggravating role, pursuant to USSG §3B1.1(c) is warranted. As a result, paragraphs 11 and 22 of the presentence report were revised to reflect that a two-level decrease, pursuant to USSG §2D1.1(b)(17) and USSG §5C1.2(a)(1)-(5), is not warranted as to Ramos."

adjustment for role . . . could not be determined," the probation officer explained:

> According to Gamez' statement to agents, he negotiated the cocaine deal with a DEA undercover agent while Ramos supplied the cocaine. . . . [A]s to Ramos, who supplied the cocaine in this transaction, coordinated with his cocaine supplier in addition to inviting Castillo, who possessed the weapon, to accompany them during this drug transaction. As such Ramos is viewed as an organizer and a two-level upward adjustment for aggravating role, pursuant to USSG §3B1.1(c) is warranted as to Ramos. Further, because Ramos is considered an organizer, a decrease of two-levels, pursuant to USSG §2D1.1(b)(17) and USSG §5C1.2(a)(1)-(5), is not warranted.

There was no additional factual information added to the PSR discussing Ramos's role in the transaction. The guideline range remained 60–71 months and Ramos continued to be ineligible for the safety-valve reduction, this time on account of the aggravating role enhancement.[7]

Again, Ramos made no objection to the factual recitation in the revised PSR, but prior to the second sentencing hearing, he filed a sentencing memorandum objecting to the aggravating role enhancement. Ramos argued that he took no supervisory role in the transaction and lacked the mental capacity to organize, lead, manage, or supervise others. At the second sentencing hearing, the district court overruled the objection. With respect to his mental capacity, the district court found that Ramos "has limited intelligence, but he clearly can tell right from wrong." As to Ramos's role in the offense, the district court stated that the factual recitation in the PSR (to which Ramos did not object) showed that Gamez contacted Ramos to supply or coordinate supplying the cocaine. The court noted that "Castillo show[ed] up

---

[7] U.S.S.G. § 5C1.2(a)(4) provides that the defendant is only eligible for the safety valve if "the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines."

at the event at the invitation of Mr. Ramos. . . . Show me discovery where it says that Gamez was communicating with Castillo. Show it to me because it is not in the PSR. And you have zero objection to the facts in the PSR." At this point, Ramos's counsel asked to approach and the court held a bench conference off the record.[8] After that conference, the court concluded,

> Whoever was the supplier of the cocaine to Mr. Ramos, it is irrelevant because but for Mr. Ramos this doesn't happen. . . . And the facts that have been presented on the PSR reflect that Mr. Ramos had to deal with at least, at least two individuals to make this happen, at least. So but for him, this transaction doesn't take place. So your objection to the plus-2 level for aggravating role is overruled.

The district court sentenced Ramos to 60 months' imprisonment and four years of supervised release. Ramos objected to the ruling and sentence and this appeal followed.

## II.

"The district court's 'interpretation or application of the Sentencing Guidelines' is reviewed *de novo*, while its factual findings are reviewed for clear error."[9] "Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. § 3B1.1(c) is a finding of fact reviewed for clear error."[10] In reviewing a district court's determination "that a defendant qualifies for an offense level adjustment for an aggravating or mitigating role . . . [a] district court's factual findings are not clearly erroneous if they are 'plausible in light of the record as

---

[8] The district court asked defense counsel if he needed a record and he responded, "I do not need a record."

[9] *United States v. Torres-Hernandez*, 843 F.3d 203, 207 (quoting *United States v. Lige*, 635 F.3d 668, 670 (5th Cir. 2011)).

[10] *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015) (citing *United States v. Gonzales*, 436 F.3d 560, 584 (5th Cir. 2006)).

a whole.'"[11] For the purposes of applying an aggravating role adjustment, "[a] defendant's role in the criminal activity . . . may be deduced inferentially from available facts."[12]

The Sentencing Guidelines provide that the district court should increase the offense level if the defendant played an aggravating role in the offense.[13] That guideline sets out three separate adjustment levels based on the scope of criminal enterprise and the role of the defendant:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.[14]

The application notes to the aggravating role guideline[15] indicate that to qualify for an adjustment the defendant "must have been the organizer, leader, manager, or supervisor of one or more other participants."[16] "An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless

---

[11] *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001) (quoting *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998)).

[12] *United States v. Ayala*, 47 F.3d 688, 690 (5th Cir. 1995) (citing *United States v. Manthei*, 913 F.2d 1130, 1135 (5th Cir. 1990)).

[13] U.S.S.G. § 3B1.1.

[14] § 3B1.1(a) – (c).

[15] This court has made clear that the application notes to the Sentencing Guidelines "generally bind federal courts unless they are inconsistent with the text of the Guideline." *Ochoa-Gomez*, 777 F.3d at 282 (citing *United States v. Garcia-Rodriguez*, 415 F.3d 452, 455 (5th Cir. 2005)).

[16] § 3B1.1 cmt. n.2. A "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." § 3B1.1 cmt. n.1. The definition of a participant excludes any person who is not criminally responsible for the commission of the offense, such as an undercover law enforcement officer. *Id.*

exercised management responsibility over the property, assets, or activities of a criminal organization."[17]

Ramos contends that the district court committed reversible error in applying the two-level aggravating role enhancement. Pointing to the government's characterization during the first sentencing hearing of his role as a "middleman," Ramos argues the facts do not establish that he directed or exercised management responsibility over Castillo—he disputes the characterization in the revised PSR that he "invit[ed] Castillo" to the drug transaction. The government responds that the facts contained in the PSR supported the aggravating role enhancement. The government points to the statements in the PSR that Ramos "supplied the cocaine" and "coordinated with his cocaine supplier in addition to inviting Castillo, who possessed the weapon, to accompany them during this drug transaction."

After reviewing the factual recitation in the PSR (to which Ramos did not object) and our precedent applying a § 3B1.1 enhancement, we conclude that the district court did not clearly err in applying the two-level enhancement. The PSR describes that Ramos coordinated with his cocaine supplier, inviting Castillo to the transaction. "When making factual findings for sentencing purposes, district courts 'may consider any information which bears sufficient indicia of reliability to support its probable accuracy'" and "[g]enerally, a PSR 'bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations.'"[18] Although Ramos contends on appeal that the evidence does not support the characterization that he invited Castillo, he did not object to the factual recitation. At the second sentencing hearing, the district court concluded that

---

[17] *Id.*

[18] *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (internal citations omitted).

No. 18-50159

"Castillo show[ed] up at the event at the invitation of Mr. Ramos." Ramos concedes that Ramos's counsel "appeared to disagree" with that characterization only in an unrecorded bench conference.

Exercising control over another participant is sufficient to support the application of the enhancement.[19] Recruitment of a participant indicates an exercise of control over that participant.[20] Ramos played a managerial role in the transaction by directing another participant in the offense. The PSR describes Ramos coordinating with Castillo to supply the cocaine, inviting him into the transaction as a cocaine supplier. Based on that evidence and "in light of the record as a whole," the district court could plausibly conclude that Ramos exercise an aggravating role in his offense by exercising control over another participant, which supports a finding that he exercised an aggravating role pursuant to § 3B1.1(c).[21]

Finally, Ramos's contention that he lacked the intellectual capacity to exercise supervisory control is unavailing. The PSR notes that Ramos reported undergoing a number of intelligence tests as a child, some of which "revealed Ramos was of normal intelligence" an others revealing "below average" intelligence. The district court acknowledged its understanding that Ramos had "limited intelligence," but noted "he clearly can tell right from wrong." Ramos cites no authority for the proposition that an aggravating role

---

[19] § 3B1.1 cmt. n.2; *United States v. Bowen*, 818 F.3d 179, 192 (5th Cir. 2016) (describing defendant's decisions to hire other individuals to drive him to pick up drugs as supporting a finding that he acted in a managerial role in the conspiracy).

[20] *Id.*; *United States v. Fillmore*, 889 F.3d 249, 255 (5th Cir. 2018) (holding that enhancement is proper where evidence demonstrate that "the defendant recruited accomplices and was involved in planning and organizing the offense"); *see also United States v. McLaughlin*, 739 F. App'x 270, 278 (5th Cir. 2018) (emphasizing defendant's recruitment of other participants).

[21] *Bowen*, 818 F.3d at 192.

## No. 18-50159

enhancement is improper when applied to someone with limited intelligence.[22] The district court plausibly concluded that Ramos had the mental capacity to exercise an aggravating role in the offense.

### III.

For the foregoing reasons, we affirm Ramos's sentence.

---

[22] Indeed, the Fourth Circuit in an unpublished decision upheld the application of the enhancement to a defendant who submitted evidence of his "mental retardation and low IQ," which was 52. *United States v. Plunk*, 415 F. App'x 650, 651–53 (4th Cir. 2011).