# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-31039

United States Court of Appeals
Fifth Circuit

**FILED**
January 14, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

    Plaintiff - Appellee

v.

LUIS ALBERTO GAMA-PERALTA, also known as Luis Gama-Peralta,

    Defendant - Appellant

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CR-120-1

---

Before HIGGINBOTHAM, JONES, and DUNCAN, Circuit Judges.

PER CURIAM:*

Appellant Luis Alberto Gama-Peralta pled guilty to conspiracy to distribute and to possess with intent to distribute one kilogram or more of cocaine. He argues that (1) the district court erred in imposing a two-level leadership-role adjustment[1] and (2) his sentence was otherwise procedurally or substantively unreasonable.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] U.S.S.G. § 3B1.1(c).

No. 18-31039

## I.

A district court's application of the Sentencing Guidelines is reviewed *de novo* and its factual findings are reviewed for clear error.[2] "Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. § 3B1.1(c) is a finding of fact reviewed for clear error."[3] "A factual finding is not clearly erroneous if it is plausible in light of the record as a whole."[4] There is clear error where a review of the record creates a "definite and firm conviction that a mistake has been committed."[5] A district court may base its factual findings on "any information that has sufficient indicia of reliability to support its probable accuracy,"[6] including, generally, a PSR.[7]

Guideline § 3B1.1(c) provides for a two-level increase if the defendant was an organizer, leader, manager, or supervisor in criminal activity. A defendant qualifies for the adjustment by exercising control over conspiracy *participants*, but we have also recognized an alternative basis for the adjustment where the defendant exercised responsibility over the conspiracy's *property and activities*.[8] Thus, in accordance with *Delgado*, "a § 3B1.1

---

[2] *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015).

[3] *Id.*

[4] *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013).

[5] *Id.* (quoting *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011)).

[6] *United States v. Valdez*, 453 F.3d 252, 267 (5th Cir. 2006) (internal quotation marks omitted).

[7] *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012).

[8] *United States v. Delgado*, 672 F.3d 320, 344–45 (5th Cir. 2012) (en banc). *Delgado* has been criticized by members of this Court for "conflat[ing] an 'adjustment' and an 'upward departure.'" *Ochoa-Gomez*, 777 F.3d at 284–85 (Prado & Elrod, JJ., concurring). But *Delgado* is still binding. *See id.*, 777 F.3d at 283 (applying *Delgado*); *United States v. Alvarez*, 761 F. App'x 363, 364–65 (5th Cir. 2019) (unpublished) (same); *United States v. Junius*, 739 F.3d 193, 208–09 (5th Cir. 2013) (same).

2

adjustment may be based on either control over people or management of assets."[9]

## II.

## A.

Here, the district court's apparent reasoning for imposing the § 3B1.1(c) enhancement was error. The PSR recommended a four-level enhancement under Guideline § 3B1.1(a) on the ground that Gama-Peralta was a leader or organizer of a criminal activity that involved five or more participants or that was otherwise extensive. The PSR made this recommendation based on its contention that Gama-Peralta was responsible for other members of the conspiracy, including Gama-Peralta's brother and co-defendant, Manuel Gama-Peralta, and his sister, Jazmin Gama-Peralta.

At sentencing, the district court accepted in part Gama-Peralta's argument that the conspiracy was a "loose-knit familial group that had no leader." The court did not apply the four-level enhancement "because a number of the co-conspirators were family members," applying § 3B1.1(c)'s two-level enhancement instead.[10] If the family members were not the participants over whom Gama-Peralta had control such that he qualified for the enhancement, the only remaining option identified by the PSR is a confidential source who drove a car with a hidden compartment used for shipping cocaine. But this confidential source cannot be a qualifying participant because the source would not have been "criminally responsible for the commission of the offense[.]"[11]

---

[9] *Ochoa-Gomez*, 777 F.3d at 283 (citing *Delgado*, 672 F.3d at 344–45).

[10] The Government had conceded that there was a "family dynamic" and that the case involved a "family relationship rather than a purely leader/subordinate relationship."

[11] *See* U.S.S.G. § 3B1.1, cmt. n.1; *see also United States v. Saavedra-Moreno*, 544 F. App'x 251, 251 (5th Cir. 2013) (unpublished) ("The Government concedes that the [confidential source] cannot be a participant for purposes of a § 3B1.1 enhancement.").

Even assuming for argument that the district court did rely—as it appears to have done—on the confidential source as the conspiracy participant controlled by Gama-Peralta, we find no clear error because, on this record, it is "plausible" that Gama-Peralta qualified for the enhancement by exercising responsibility over the assets and activities of the drug conspiracy. As reflected in the PSR, Gama-Peralta assisted the confidential source in registering a car outfitted with a hidden compartment for transporting cocaine, directed the source to drive the car to a hotel, and instructed the source to remain at the hotel while Gama-Peralta and others left with the car. Gama-Peralta also negotiated two drug sales when contacted by a confidential source. In intercepted phone calls, Gama-Peralta and other co-conspirators "discuss[ed] the quality, inspections, mixing, and weighing" of cocaine. Prior to a sale, he "instructed [his sister] Jazmin to weigh the cocaine and advised Jazmin that the unknown male would arrive at the location to retrieve the drugs from her." On another occasion, Gama-Peralta advised an undercover buyer of the cocaine's price and stated he "would instruct his brother, Manuel, . . . to deliver the cocaine with the next shipment[.]" These acts render it plausible that Gama-Peralta had control over the conspiracy's assets, including the car with a hidden compartment.[12] Thus, imposition of this enhancement, considered in light of the complete record, was not clear error.

---

[12] His role parallels those of Ochoa-Gomez and Alvarez. *See Ochoa-Gomez*, 777 F.3d at 284 ("[Ochoa-Gomez] assisted in negotiations, contributed eight kilograms of jointly-owned crystal methamphetamine, stored and packaged the drugs, delivered them to the undercover officer, and indicated a willingness to supply more drugs in the future."); *Alvarez*, 761 F. App'x at 365 ("The significance of Alvarez's role is evidenced by his repeated attempts to reach the undercover agent after his co-defendants were arrested, his threat that someone would pay as a result of the lost drugs, and his indication that he had to go to Mexico to explain the loss of the load to unidentified coconspirators.").

**B.**

Finally, we reject Gama-Peralta's additional arguments that his sentence was unreasonable. This Court, in reviewing sentencing decisions for reasonableness, first reviews for significant procedural error and then considers the substantive reasonableness.[13] Gama-Peralta did not object to procedural or substantive reasonableness at sentencing, so plain-error review applies.[14]

As to procedure, he argues the district court relied on a clearly erroneous fact at sentencing—that Gama-Peralta brought drugs into the United States from another country.[15] The court stated that Gama-Peralta "brought in . . . a minimum of 150 kilograms of cocaine into our community and the various communities in this country." But the most plausible interpretation of the court's statements, in context, is that the court believed Gama-Peralta brought drugs into the court's jurisdiction from other locations in the United States.

As to substance, Gama-Peralta's within-Guidelines sentence is entitled to a presumption of reasonableness.[16] A defendant rebuts this presumption by "showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[17] Gama-Peralta does not rebut this presumption with his arguments that the court should have accounted for the disparity between his sentence and his brother Manuel's shorter sentence and that the court placed improper weight on factors like Gama-Peralta's nationality and the drug quantities

---

[13] *United States v. Nguyen*, 854 F.3d 276, 280 (5th Cir. 2017).

[14] *See United States v. Neba*, 901 F.3d 260, 262 (5th Cir. 2018).

[15] *See Nguyen*, 854 F.3d at 280 (noting, in a list of potential procedural errors, "selecting a sentence based on clearly erroneous facts").

[16] *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

[17] *Id.*

attributed to the two brothers. The record reflects that the district court considered and rejected Gama-Peralta's arguments, and he does not show error, much less plain error, in this within-Guidelines sentence.

## III.

We affirm the sentence of the district court.