# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 8, 2022

Lyle W. Cayce
Clerk

No. 20-30807

United States of America,

*Plaintiff—Appellee*,

*versus*

Santiago Delfierro Anguiano,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:18-CR-222-1

Before Owen, *Chief Judge*, and Higginbotham and Elrod, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

Santiago Anguiano pleaded guilty to attempting to obtain or possess methamphetamine in prison. In determining the appropriate sentence, the district court applied a cross reference under the United States Sentencing Guidelines (U.S.S.G.) based on Anguiano's intent to distribute, as well as a two-level enhancement based on his leadership role in the offense. The district court sentenced Anguiano to 120 months' imprisonment. Anguiano now appeals the sentence on various grounds. Because the evidence from the record shows that Anguiano intended to distribute the methamphetamine

and that he acted as a leader in the scheme, we AFFIRM the judgment of the district court.

## I.

Santiago Anguiano was an inmate at FCC Pollock, a federal correctional and penal institution. In December 2015, an inmate informed an FBI special agent that Anguiano had offered to "hook him up," and that he believed Anguiano had a connection with a correctional officer who could smuggle drugs or contraband into the prison. The FBI then launched an undercover operation, using a task force officer to pose as a guard willing to smuggle drugs. Anguiano provided the officer with a number that put him in contact with his daughter, Gabriela Anguiano.

Gabriela and the officer negotiated a deal to smuggle three ounces of methamphetamine, an unspecified quantity of marijuana, cell phones, and jewelry into the prison. The officer was to keep one ounce of the methamphetamine and then provide the remaining items to Anguiano. These items were later seized thirty miles away from the prison from a vehicle driven by Bacilio Ramirez, Gabriela's common-law husband. Drug Enforcement Administration laboratory tests found that the methamphetamine seized from the vehicle weighed 82.3 grams and was 97% pure. A telephone recording captured on the FCC Pollock recording system revealed conversations between Anguiano and Gabriela, as well as Gabriela and the undercover officer setting up the deal.

Anguiano, Gabriela, and Ramirez were charged with various crimes for their participation in the smuggling scheme. In January 2020, Anguiano pleaded guilty pursuant to a plea agreement to one count of attempting to obtain or possess methamphetamine in prison in violation of 18 U.S.C. §§ 1791(a)(2) and (b)(1).

No. 20-30807

After multiple sentencing hearings, the district court found that Anguiano intended to distribute the methamphetamine and that he played a leadership role in the scheme. Relying on U.S.S.G. §§ 2D1.1(b)(4) and 3B1.1(c), the district court found Anguiano's total offense level to be 31, his criminal history category to be III, and the applicable guideline range to be 135–168 months' imprisonment. The district court then varied downwards, sentencing Anguiano to 120 months' imprisonment. Anguiano timely appealed to this Court.

## II.

Anguiano challenges the district court's application of the U.S.S.G. § 2P1.2 cross-reference to § 2D1.1 and the subsequent two-level enhancement of § 2D1.1(b)(4) based on his intent to distribute the methamphetamine in prison. He also challenges a two-level enhancement under U.S.S.G. § 3B1.1(c) based on his leadership role within the scheme. We reject each argument.

## A.

Anguiano first challenges the district court's application of the cross-reference, arguing that there is no evidence in the record that he intended to distribute the methamphetamine. He argues that the district court improperly relied on this court's decision in *United States v. Carlton*, 593 F. App'x 346 (5th Cir. 2014) (unpublished), *cert. denied*, 576 U.S. 1044 (2015), to find an intent to distribute. He also argues that the district court erred by relying on the weight, value, and purity of the methamphetamine without verifying the information through a certified drug-analysis report or expert testimony.[1] The Government responds that evidence from the PSR

---

[1] It is unclear whether Anguiano intended this argument to challenge the accuracy of the amount and purity, or whether the amount and purity would evidence personal use.

No. 20-30807

and the FBI's sworn testimony are enough to show that the district court did not clearly err in finding an intent to distribute.

We review the district court's "interpretation and application of the Guidelines, including any cross references and selection of the applicable sentencing guideline, de novo." *United States v. Stanford*, 883 F.3d 500, 505 (5th Cir. 2018). We review factual findings at sentencing for clear error. *United States v. Ochoa-Gomez*, 777 F.3d 278, 281 (5th Cir. 2015). Further, "in determining whether an enhancement applies, a district court is permitted to draw reasonable inferences from the facts, and these inferences are fact-findings reviewed for clear error as well." *United States v. Caldwell*, 448 F.3d 287, 290 (5th Cir. 2006). "A factual finding that is plausible based on the record as a whole is not clearly erroneous." *Ochoa-Gomez*, 777 F.3d at 282.

The applicable guideline for an 18 U.S.C. § 1791 offense is U.S.S.G. § 2P1.2, which provides for a cross-reference to § 2D1.1 "[i]f the object of the offense was the distribution of a controlled substance." U.S.S.G. § 2P1.2(c)(1). Further, § 2D1.1(b)(4) calls for a two-level enhancement if "the object of the offense was the distribution of a controlled substance in a

---

Regarding the former, this argument is meritless because Anguiano verified the amount and purity when he signed the Stipulated Factual Basis for the Guilty Plea.

Further, Anguiano includes two other arguments against cross-referencing that he raised for the first time in his reply brief. The first is that the cross-reference does not apply to prisoners. The second is that a finding of intent to distribute would violate his plea agreement because his conviction was limited to possession, and no reference to distribution was made in the plea agreement or rearraignment. We conclude that Anguiano abandoned these arguments due to his failure to raise them in his initial brief. *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992) ("Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned."). However, even if Anguiano had properly briefed these issues, they would be meritless. *See Carlton*, 593 F. App'x at 348 (applying § 2D1.1(b)(4) to a prisoner and concluding that a district court could find an intent to distribute when the defendant was only convicted of possession).

prison, correctional facility, or detention facility." A fact-finder may infer an intent to distribute a controlled substance based on "mere possession of a quantity of drugs inconsistent with personal use." *United States v. Mays*, 466 F.3d 335, 341 (5th Cir. 2006) (considering such an inference permissible in the context of sufficiency-of-the-evidence review); *see also United States v. Kates*, 174 F.3d 580, 582 (5th Cir. 1999) ("[I]ntent to distribute may be inferred from the possession of a quantity of drugs too large to be used by the defendant alone."). Along with drug quantity, a fact-finder may also infer an intent to distribute based on drug purity. *United States v. Valdiosera-Godinez*, 932 F.2d 1093, 1096 (5th Cir. 1991) (considering such an inference permissible in the context of sufficiency-of-the-evidence review).

We first address Anguiano's challenge to the district court's reliance on *Carlton*, where we upheld a finding of an intent to distribute under the same cross-reference provision. *Carlton*, 593 F. App'x at 348–49. Anguiano lists several factual differences between that case and this one. However, the district court did not rely on *Carlton* for its factual or procedural similarities, but rather for its holding. *See* R. at 146 ("*Carlton* made it clear to me, although it's slightly divergent procedurally -- the defendant's argument here that this could not be a distribution crime is not correct and inapposite."). We do not find the district court's reliance on *Carlton* to be error.

Although there is no explicit evidence of what Anguiano intended to do with the methamphetamine if the smuggling scheme succeeded, the district court did not clearly err in inferring an intent to distribute. Prior to the sting operation, an inmate informed an FBI agent that Anguiano had offered to "hook him up," and that he had a connection to a guard who could smuggle contraband. That exchange was followed by Anguiano putting an undercover officer in touch with his daughter to smuggle methamphetamine into the facility. Further, the quantity of methamphetamine to be delivered

to Anguiano was 54 grams, an amount that does not suggest personal use only.[2] *See United States v. Dickey*, 102 F.3d 157, 160 n.3 (5th Cir. 1996) ("Methamphetamine is used in five to ten milligram doses."). The methamphetamine's 97% purity also suggests distribution. *See Valdiosera-Godinez*, 932 F.2d at 1096 (intent to distribute found based on 66 ½ pounds of 91% pure cocaine). Finally, Anguiano does not have a recorded history of using methamphetamine specifically, which further undermines the position that he would have used it for personal consumption. It follows that the district court could have reasonably inferred that Anguiano intended to distribute the methamphetamine.

Therefore, we affirm the district court's application of the cross-reference.

## B.

Anguiano next challenges the two-level enhancement applied to his sentencing based on his purported leadership role in the smuggling scheme. He first argues that the district court's finding inappropriately relied on a letter "supposedly written by [Gabriela]," and that the district court could not trust its authenticity without her verification. He next argues that his inmate status prevented any significant degree of influence or control over Gabriela or her husband.[3] The Government responds that the district court had no reason to question the authenticity of Gabriela's letter because

---

[2] The total amount of methamphetamine found in Ramirez's vehicle was 82.3 grams. However, because the undercover officer was to keep one ounce for himself, approximately 54 grams was to be delivered to Anguiano.

[3] Anguiano also argues for the first time in his reply brief that the district court mistakenly interpreted Gabriela's statement that he "pulled [her] in asking for help" as evidence that he recruited her. However, Anguiano abandoned this argument due to his failure to address it in his initial brief. *Beaumont*, 972 F.2d at 563.

No. 20-30807

Anguiano had submitted it himself to support the mitigation of his sentence. The Government also contends that evidence from the PSR, testimony that Anguiano had offered to "hook up" another prisoner with contraband, the fact that he provided the undercover officer with Gabriela's phone number, and Gabriela's letter are enough to prove his leadership role.

We agree with the Government. U.S.S.G. § 3B1.1(c) calls for a two-level enhancement to the sentence "[i]f the defendant was an organizer, leader, manager, or supervisor" in the criminal activity. "Whether a defendant exercised an aggravating role as an organizer, leader, manager, or supervisor for purposes of an adjustment under U.S.S.G. § 3B1.1(c) is a finding of fact reviewed for clear error." *Ochoa-Gomez*, 777 F.3d at 281. But when a party fails to present an argument to the district court, we review for plain error. *United States v. Juarez*, 626 F.3d 246, 253–54 (5th Cir. 2010). The commentary to § 3B1.1(c) lists factors to consider when determining a defendant's leadership role, namely

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 n.4.

Because Anguiano failed to present his authenticity argument to the district court, this issue is reviewed under the plain error standard. We conclude that the district court did not plainly err because this argument is utterly without merit. Anguiano submitted the letter to the district court himself. And he fails to produce any evidence that would call the letter's authenticity into question.

No. 20-30807

Anguiano's leadership role in the smuggling scheme is supported by the record. Gabriela's letter stating that Anguiano "pulled [her] in asking for help" supports the inference that he initiated the offense, participated in planning the offense, and recruited an accomplice. This inference is also supported by the fact that Anguiano put the undercover officer in contact with Gabriela, and that Anguiano would have been in possession of the methamphetamine inside the prison had the scheme succeeded. Thus, the district court did not err in finding Anguiano's leadership role, and we affirm the district court's application of the two-level enhancement.

## III.

Because the record supports the finding that Anguiano intended to distribute the methamphetamine and that he played a leadership role in the offense, we AFFIRM the judgment of the district court.