# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51427

United States Court of Appeals
Fifth Circuit

**FILED**
May 4, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

  Plaintiff - Appellee

v.

BOBBY DWAYNE FILLMORE, also known as Jango,

  Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before OWEN, SOUTHWICK, and WILLETT, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Bobby Dwayne Fillmore pled guilty to conspiracy to maintain a chop shop in the Dallas, Texas, area. The district court issued a within-Guidelines sentence of 51 months based partly on a two-level enhancement for being "in the business" of receiving and selling stolen property. We conclude Fillmore was not "in the business," and thus we VACATE in part and REMAND for re-sentencing. As to other rulings, we AFFIRM in part and DISMISS in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Bobby Dwayne Fillmore was a soldier in the United States Army, serving on active duty as a food service inspector while stationed at Fort Hood, Texas.

No. 16-51427

In 2014 and 2015, Fillmore conspired with other individuals to steal motorcycles in various cities throughout Texas. Texas state investigators obtained a warrant to search Fillmore's residence, where they discovered at least one stolen motorcycle. Fillmore pled guilty to conspiracy to maintain a chop shop, which is a building where one or more persons receive, conceal, disassemble, or reassemble stolen vehicles. *See* 18 U.S.C. § 2322(b).

Although Fillmore admitted to stealing only a single motorcycle in the factual basis for his plea, the presentence report ("PSR") nonetheless described how over the course of two years, he stole a number of motorcycles throughout Texas and then transported them to a location in Dallas, where his co-conspirators would alter the Vehicle Identification Numbers ("VIN"). Following transport of the stolen motorcycles to Dallas, it appears that Fillmore took two varying courses of action. He either sold the motorcycles directly to his co-conspirators at the Dallas chop shop, or he would have his co-conspirators alter the VINs and return the motorcycles to his possession upon completion of the work.

The district court accepted Fillmore's guilty plea. Under the Sentencing Guidelines, conspiracy to maintain a chop shop carries a base level of eight. U.S.S.G. § 2B6.1(a). In adopting the findings of the PSR, the district court applied three enhancements to the base level, two of which Fillmore now challenges on appeal. Fillmore declines to challenge a ten-level enhancement based on the value of the motorcycles involved, which exceeded $219,000. The second enhancement added two levels under Section 2B6.1(b)(2) for being "in the business of receiving and selling stolen property." In addition, the court added two levels under Section 3B1.1(c) for being "an organizer, leader, manager, or supervisor" in a criminal activity.

Fillmore objected to the PSR and requested a downward departure in light of his military career, which included 18 years of active duty service. The

2

No. 16-51427

district court denied his request and, based on a total offense level of 22 and a criminal history category of I, Fillmore's advisory Guidelines range was 41 to 51 months of imprisonment.  The district court sentenced Fillmore to 51 months of imprisonment, three years of supervised release, and restitution in the amount of $219,175.43.  Fillmore timely appealed.

## DISCUSSION

Fillmore raises four issues on appeal.  First, he argues that the district court clearly erred in finding that he was "in the business of receiving and selling stolen property" under Section 2B6.1(b)(2).  Second, he argues that the district court clearly erred in enhancing his sentence for a leadership role in the offense pursuant to Section 3B1.1(c).  Third, he argues that the district court clearly erred in failing to grant his request for a downward departure. Finally, he challenges the substantive reasonableness of the sentence.

### I.     *"In the business" enhancement*

Section 2B6.1(b)(2) provides for a two-level enhancement "[i]f the defendant was in the business of receiving and selling stolen property." § 2B6.1(b)(2).  Fillmore objected in the district court to the enhancement. When a defendant preserves an issue as Fillmore did, our review of "factual findings under the Guidelines [is] for clear error." *United States v. Mackay*, 33 F.3d 489, 492 n.3, 496 (5th Cir. 1994).  Findings are not clearly erroneous if they are plausible based on the record as a whole.  *United States v. Ochoa-Gomez*, 777 F.3d 278, 282 (5th Cir. 2015).  A district court may base its findings on information having sufficient indicia of reliability to support its probable accuracy, such as unrebutted information contained in a PSR.  *Id.*

Although the Section 2B6.1 enhancement refers specifically to motor vehicle-related crime, the Guidelines contain an identical version of the

3

enhancement in Section 2B1.1(b)(4) for all other forms of theft. *See* § 2B1.1(b)(4). Indeed, the Section 2B6.1 commentary directs courts to the commentary for Section 2B1.1, the more commonly discussed version of the "in the business" enhancement. § 2B6.1 cmt. n.1. Fillmore argues that in our line of cases analyzing Section 2B1.1, we have held that the enhancement "cannot apply to a defendant who merely sells property that he himself has stolen." Under such a standard, he argues that the PSR demonstrates that he was in the business of selling motorcycles that he originally stole and is therefore not subject to the enhancement.

When interpreting Section 2B1.1, "our approach views the enhancement as a punishment for fences, people who buy and sell stolen goods, thereby encouraging others to steal, as opposed to thieves who merely sell the goods which they have stolen." *United States v. Sutton*, 77 F.3d 91, 94 (5th Cir. 1996). In reaching this interpretation, we adopted the reasoning of a Seventh Circuit opinion denying applicability of the enhancement when "the defendant had stolen property and then later resold it himself." *United States v. Esquivel*, 919 F.2d 957, 960 (5th Cir. 1990) (citing *United States v. Braslawsky*, 913 F.2d 466, 468 (7th Cir. 1990)). In *Esquivel*, we held that "[i]t is because *someone else* stole the shoes sold by Esquivel that the commission of other crimes was encouraged and that the fencing operation falls within the intended purview of" the enhancement. *Id.*

Here, the parties focus on the language of a single paragraph in the PSR:

The witness stated that the motorcycles brought to Estart Motors were "cut" and the VINs were changed using VINs from "donor or salvage" frames and parts from the stolen motorcycles were swapped out, but this became too time consuming. The witness purchased ten full motorcycles from Fillmore for $1,500 each. The witness obtained the money to pay Fillmore from another individual. The witness put stolen motorcycle parts on Fillmore's personal motorcycle with Fillmore's knowledge. The witness

reported swapping out VINs on five other motorcycles for Fillmore that were given back to Fillmore.

Fillmore acknowledges that he was in the business of selling stolen property, as the PSR makes clear. He does, however, challenge the Government's contention that he "received" stolen property under Section 2B6.1(b)(2) because five motorcycles were "given back" to him following VIN replacement.

There are ambiguities in the key statement that motorcycles were "given back to Fillmore." The district court did not articulate an interpretation. We find the most reasonable understanding to be that Fillmore stole those five, allowed someone else to attach new VINs on them, and then received them back. The PSR does not suggest these five motorcycles were sold to the person who changed the VINs, then sold back to Fillmore. Accepting that meaning, we need to decide whether a thief is subject to the Section 2B6.1(b)(2) enhancement when he temporarily transfers custody of stolen goods to another co-conspirator to make minor modifications, then receives the property back with the intent to sell the stolen and altered items to someone else. We have already held that a defendant is not subject to the enhancement when he sells property that he originally stole because the enhancement is for "those in the business of receiving and selling property *stolen by other*s." *Mackay*, 33 F.3d at 496. In *Mackay*, application of the enhancement turned on "sufficient evidence on which the district court could find that Mackay bought the backhoe from [another person], knowing it to be stolen, before transporting it to Texas" for resale. *Id.* at 497.

Here, the PSR indicates that Fillmore either sold the motorcycles he stole to his co-conspirators or received their assistance in removing the VINs, leaving the motorcycles in their possession while the work was being completed. The Government cites three cases in arguing that such facts subject Fillmore to the enhancement. We will examine all three.

In one, the defendant was a middleman in a conspiracy to buy and sell stolen cars. *Sutton*, 77 F.3d at 92. He took "orders for particular vehicles, contact[ed] people to steal them, and then deliver[ed] the stolen vehicles to the buyers." *Id.* We held that the "in the business" enhancement is focused on those who "buy and sell stolen goods," meaning that selling stolen property is not sufficient. *Id.* at 94. Sutton's role as a middleman, having not stolen the cars himself, triggered the enhancement. *Id.* Here, Fillmore stole the motorcycles himself, and there is no indication in the PSR that he purchased motorcycles stolen by others.

In an unpublished opinion, we discussed a defendant who "was a member of a large and sophisticated conspiracy engaged in stealing vehicles, altering their VINs, and selling stolen vehicles and their parts to innocent purchasers." *United States v. Rollins*, No. 93-1444, 1994 WL 14068, at \*2 (5th Cir. Jan. 3, 1994). Citing this language from the opinion, the Government attempts to derive the rule that membership in such a conspiracy is sufficient to trigger the "in the business" enhancement. Such a reading of *Rollins* would conflict with our holding that the enhancement applies to someone who buys stolen goods in order to later resell them — it does not apply to the original thief who sells to such a middleman. *See Sutton*, 77 F.3d at 94. Under the Government's reading of *Rollins*, the original thief who sold the stolen property to a fence would be subject to the same enhancement as the fence simply because he was a cog in the overall conspiracy machine. Such a reading contradicts our precedent. A middleman, as opposed to the original thief, receives the enhancement because he encourages thieves to continue their thievery by providing a market for stolen goods. *Id.*

Notwithstanding the existence of a larger conspiracy in *Rollins*, we held that the defendant properly received the enhancement because he personally qualified as a fence of stolen property. *See* 1994 WL 14068, at \*2. His role in

the conspiracy was to act as the middleman similar to the defendant in *Sutton.* *Id.* He knowingly *purchased* stolen vehicles for resale. *Id.* *Rollins* therefore aligns with our precedent proscribing application of the enhancement for defendants who sell the goods they originally stole.

A case from the Eighth Circuit does support the Government's interpretation. *See United States v. Borders*, 829 F.3d 558, 569 (8th Cir. 2016). The court applied the "in the business" enhancement, noting that "[e]ven if [the defendant] was not himself a fence, he personally participated in [the fence's] activities." *Id.* "He often scouted and stole trucks" with the fence's employee, "stored stolen property at [the fence's] storage facility," and "filled [the fence's] 'shopping lists.'" *Id.* That holding is inconsistent with our interpretation of the reach of the enhancement. Our precedent requires that a recipient of the enhancement be a fence. *Esquivel*, 919 F.2d at 960.

The enhancement does not apply when "the record [is] clear that the defendants themselves stole the goods they sold." *Mackay*, 33 F.3d at 497. The record does not support that Fillmore sold or attempted to sell stolen property that he himself did not first steal. His temporary relinquishment of possession of five motorcycles he stole, allowing someone else to modify them to facilitate their sale, then receiving them back does not convert him into someone who receives stolen property. The district court erred in applying a two-level enhancement under Section 2B6.1(b)(2). We defer consideration of the remedy for the violation until we consider Fillmore's other arguments.

## II.    *Role in the offense*

Fillmore argues that the district court clearly erred in enhancing his sentence for a leadership role in the offense. Section 3B1.1(c) provides for a two-level enhancement if the defendant is an organizer, leader, manager, or supervisor of at least one other participant in any criminal activity. § 3B1.1(c)

& cmt. n.2. Here too, Fillmore preserved the argument. We therefore review the district court's finding regarding Fillmore's role in the offense for clear error. *United States v. Rose*, 449 F.3d 627, 633 (5th Cir. 2006). Such a finding need only be supported by a preponderance of the evidence. *United States v. Puig-Infante*, 19 F.3d 929, 944 (5th Cir. 1994). "When faced with facts contained in the PSR that are supported by an adequate evidentiary basis with sufficient indicia of reliability, a defendant must offer rebuttal evidence demonstrating that those facts are 'materially untrue, inaccurate or unreliable.'" *United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (quoting *United States v. Huerta*, 182 F.3d 361, 364–65 (5th Cir. 1999)).

The Guidelines provide the following factors for consideration in determining whether a defendant had a leadership or organizational role:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

§ 3B1.1 cmt. n.4. Here, the PSR contained statements by a co-defendant describing how Fillmore recruited and paid the co-defendant to scout potential theft targets and otherwise assist with the theft. Although Fillmore objected to the use of the co-defendant statements, he failed to offer any evidence to demonstrate that the statements were "materially untrue, inaccurate or unreliable." *Harris*, 702 F.3d at 230 (citation omitted).

We have previously held that a Section 3B1.1(c) enhancement was proper when evidence showed that the defendant recruited accomplices and was involved in planning and organizing the offense. *See United States v. Peters*, 978 F.2d 166, 170 (5th Cir. 1992). As such, the district court did not clearly err in applying the Section 3B1.1(c) enhancement.

No. 16-51427

### III.    *Downward departure*

Fillmore next argues that the district court clearly erred by denying a downward departure under Section 5H1.11 based on his prior military service. We lack jurisdiction, though, to review a sentencing court's refusal to grant a downward departure unless the "court based its decision upon an erroneous belief that it lacked the authority to depart." *United States v. Alaniz*, 726 F.3d 586, 627 (5th Cir. 2013) (citation omitted).  The record does not suggest the district court based its decision on an erroneous belief that it lacked the authority to depart.  We therefore do not have jurisdiction to review this issue.

### IV.    *Substantive reasonableness of the sentence*

Finally, Fillmore argues that his sentence was substantively unreasonable as it was greater than necessary to achieve the goals of sentencing under 18 U.S.C. § 3553(a).  Our review of that issue is a two-step process.  *United States v. Delgado-Martinez*, 564 F.3d 750, 752 (5th Cir. 2009). The first step we have already taken; namely, we have determined that the district court committed a significant procedural error by making an improper calculation of the Guidelines range.  *Id.*  Such an error requires a remand for resentencing "unless the proponent of the sentence establishes that the error 'did not affect the district court's selection of the sentence imposed.'"  *Id.* (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)).  Only if the error was harmless do we take the second step of analysis which is to consider the substantive reasonableness of the sentence.  *Id.*  Harmlessness means "the district court would have imposed the same sentence absent the Guidelines error."  *Id.* at 753–54.

As to Fillmore, the erroneous Guidelines range was 41 to 51 months based on a total offense level of 22.  The district court held that "all the facts in this case suggest that a sentence at the high end of the Guidelines is

9

appropriate" and imposed a sentence of 51 months.  Under a total offense level of 20, the Guidelines range is 33 to 41 months.  Because the district court indicated it was reaching its decision based on the Guidelines calculation, "we cannot conclude that 'the district court had [the 51-month] sentence in mind and would have imposed it, notwithstanding the error made in arriving at the defendant's [G]uideline range.'"  *Id.* at 754 (quoting *United States v. Huskey*, 137 F.3d 283, 289 (5th Cir. 1998)).  A remand for re-sentencing is therefore required.

AFFIRMED in part, DISMISSED in part, VACATED in part, and REMANDED for re-sentencing.