# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 24, 2021

Lyle W. Cayce
Clerk

No. 19-20833

United States of America,

*Plaintiff—Appellee*,

*versus*

Jaimian Rashaad Sims,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-455-2

Before Davis, Haynes, and Oldham, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*:

A jury found Defendant, Jaimian Sims, guilty of sex trafficking a minor and conspiracy to sex traffic a minor. The district court imposed a life sentence. Sims appeals his conviction arguing that the evidence was insufficient to convict, and that certain rap videos were improperly admitted into evidence and shown to the jury. He also appeals his sentence arguing that he should not have received an enhancement based on his leadership role in the crime. For the reasons that follow, we AFFIRM.

No. 19-20833

# I. BACKGROUND

Sims was a Houston-based rap artist (known as "Sauce Lean") and pimp who associated with a group who called themselves "The Sauce Factory" (TSF). TSF members were allowed to use a large house called "the Mansion" which was owned by one of the top TSF members known as "Sauce Walka." At some point between 2016 and 2017, Sims linked up with co-defendant Gary Shawn Haynes, Jr., who was a college football player. Haynes knew Sims was a pimp and wanted an opportunity to join that lifestyle.

To get Haynes started, Sims instructed his girlfriend and co-defendant, Tabbetha Mangis, to find Haynes a "white girl" to work as a prostitute for Haynes. Mangis reached out to the 17-year-old minor victim, who throughout proceedings has been referred to as Jane Doe. Mangis knew Jane Doe as a friend of Mangis's younger sister, and she knew that Jane Doe was 17 years old. Several text messages were exchanged between Jane Doe, Mangis, and Haynes, which resulted in Jane Doe agreeing to work as a prostitute for Haynes. Haynes also knew that Jane Doe was underage. Haynes picked up Jane Doe and brought her back to the Mansion where Jane Doe was taught the rules of prostituting.

Shortly after her arrival at the Mansion, Haynes brought Jane Doe to the Express Inn motel where he provided Jane Doe fraudulent identification to obtain a room. Meanwhile, Sims had previously checked in to the Express Inn to oversee his own prostitutes. After Jane Doe's initial check-in, she was relocated to a room in the Express Inn occupied by one of Sims's prostitutes, referred to as Janet Doe. Janet Doe was instructed by Sims to teach Jane Doe how to make money— "help her," make her "comfortable," and "help her post ads."

2

Jane Doe then engaged in commercial sex for three days in which all money she earned from these activities was paid to Haynes. After the three days, on November 23, 2017, Jane Doe called the police and asked them to arrest her so that she could escape. The police arrived and recovered Jane Doe, and Sims and several prostitutes at the hotel were arrested.

Sims was charged in a three-count superseding indictment with conspiracy to commit sex trafficking of minors (Count 1), sex trafficking of minors (Count 2), and sex trafficking by force, fraud, or coercion (Count 3). The case went to trial where a jury found Sims guilty of Counts 1 and 2 but not guilty of Count 3.

During pretrial proceedings, Sims filed a motion in limine requesting that the Government not mention song lyrics in any audio or video recording from his rap songs and associated TSF acts. The district court decided to admit some videos but reserved final determination for trial. At trial, Sims objected to admission of the videos, but his objections were overruled and the videos, which graphically depicted and glorified guns, drugs, prostitution, pimping, and misogyny, were admitted and shown to the jury.

Upon sentencing, the PSR recommended an advisory guidelines range of life imprisonment. Sims received a four-level adjustment in his offense level for being an organizer of criminal activity that involved five or more participants. Sims objected to this increase, but the objection was overruled. The district court sentenced Sims to life imprisonment with five years of supervised release. Sims timely appealed.

## II. DISCUSSION

Sims argues that the evidence is insufficient to support his conviction for sex trafficking of a minor because the Government failed to prove beyond a reasonable doubt that he sex trafficked a minor or aided anyone else in doing so. He contends that Haynes and Mangis orchestrated the sex trafficking of

No. 19-20833

Jane Doe and that the Government did not prove that he knew or recklessly disregarded the fact that Jane Doe was under the age of 18 or that he had a reasonable opportunity to observe Jane Doe. He also contends that the evidence was insufficient to show beyond a reasonable doubt that he benefitted or received anything of value from the sex trafficking of a minor, nor did it show that he aided or abetted anyone in doing so. Similar arguments are made regarding the conspiracy conviction. Sims also challenges the admission of the rap videos at trial.

*A. Standard of Review*

When, as in this case, a defendant properly preserves the issue of evidentiary sufficiency,[1] this Court affirms the conviction "if, after viewing all the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] We consider "whether the inferences drawn by a jury were rational, as opposed to being speculative or insupportable, and whether evidence is sufficient to establish every element of the crime."[3]

---

[1] After the Government rested its case, Sims moved for a judgment of acquittal on all counts under Federal Rule of Criminal Procedure 29. The motion was denied, but in his motion, Sims's argument focused on the insufficiency of the evidence regarding his knowledge of Jane Doe's age and how that knowledge was required for the conspiracy crime and the actual sex trafficking crime. This argument regarding knowledge of the minor victim's age is also the focus of Sims's argument on appeal. Therefore, Sims properly preserved his issue of evidentiary sufficiency.

[2] *United States v. Vargas-Ocampo*, 747 F.3d 299, 301 (5th Cir. 2014) (en banc).

[3] *Id.* at 302.

*B. The Substantive Conviction*

To convict a defendant of sex trafficking a minor requires the government to establish that the defendant (1) "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or . . . benefits, financially or by receiving anything of value" from the above described venture, and (2) knowledge that the person has not attained the age of 18 years.[4] The knowledge or mens rea requirement can be met in one of three ways: (1) actual knowledge; (2) reckless disregard of the minor's age; or (3) a defendant's reasonable opportunity to observe the minor.[5] The third option regarding observation of the victim has been characterized by this Court as a strict liability option for the Government.[6]

To prove that there was a conspiracy to sex traffic a minor, the Government must additionally show "beyond a reasonable doubt that an agreement existed to violate the law and each conspirator knew of, intended to join, and voluntarily participated in the conspiracy."[7] The agreement may be tacit rather than explicit, "may be established solely by circumstantial evidence[,] and may be inferred from concert of action."[8]

In this case, the jury was presented with sufficient evidence to conclude that Sims had a reasonable opportunity to observe Jane Doe. First, Janet Doe testified that Sims and Haynes together introduced her to Jane Doe

---

[4] 18 U.S.C. § 1591(a).

[5] § 1591(a), (c).

[6] "The better reading of § 1591(c) is that the government may prove that the defendant had a reasonable opportunity to view the victim *in lieu of* proving knowledge." *United States v. Copeland*, 820 F.3d 809, 813 (5th Cir. 2016) (quoting *United States v. Robinson*, 702 F.3d 22, 31 (2d Cir. 2012)).

[7] *United States v. Chon*, 713 F.3d 812, 818 (5th Cir. 2013).

[8] *Id.* at 818–19 (internal quotation marks and citations omitted).

No. 19-20833

at the hotel. Although Jane Doe testified that only Haynes introduced her to Janet, the jury was allowed to weigh and assess credibility on this conflicting testimony. If the jury credited Janet Doe, an introduction where Sims was present supports a finding that Sims had ample time to observe Jane Doe.

Second, Jane Doe testified that she saw Sims at the Express Inn, once while he was outside going up to the second floor, and once when Sims came into Jane Doe and Janet Doe's room. When Sims came into the room, Jane Doe saw him briefly and then she went back to the bathroom and mirror area of the room while Sims spoke with Janet Doe. The jury could reasonably infer that if Jane Doe saw Sims while he was traversing the motel, then Sims likely also saw Jane Doe. More importantly, however, the jury was able to see photos of Jane and Janet Doe's small room in the motel and conclude that Sims had a reasonable opportunity to observe Jane Doe when he came into the room.

Additional circumstantial evidence was presented that could have aided the jury in determining that Sims recklessly disregarded Jane Doe's age. Jane Doe testified that upon her arrival with Haynes at the motel, Haynes went "upstairs" at the motel to obtain a fraudulent I.D. for Jane Doe so she could rent a room.[9] Testimony revealed that Sims had a room on the second floor. Furthermore, Janet Doe testified that she had previously found an I.D. from her friend, Monica, in her room, and she gave the I.D. to Sims. She later saw that Jane Doe was using that I.D. The jury was entitled to infer from this

---

[9] The Express Inn General Manager testified that guests were required to show ID and be 18 years old to rent a room.

circumstantial evidence that Sims was providing fraudulent identification for Haynes to give to a minor (Jane Doe) so she could rent a room.[10]

With respect to Sims's argument that the evidence was insufficient to show beyond a reasonable doubt that he benefitted from or received anything of value from sex trafficking a minor or that he aided or abetted anyone in doing so, the Government need not show this benefit element if it alternatively proves that the defendant "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits" a person under the age of 18, knowing the person will be caused to engage in a sex act.[11] The evidence supports a finding that Sims recruited Jane Doe by directing Mangis to get Haynes a "white girl" to work as a prostitute. His direction to Janet Doe to have Jane Doe stay with her at the motel to help her feel more comfortable so she would make money through prostitution also supports this conclusion that Sims participated in enticing her into prostitution.

The evidence also supports the conspiracy conviction. Sims knew about the criminal conduct and voluntarily participated in it when he agreed to find Haynes a girl to pimp, directed Mangis to do the finding, and directed one of his girls, Janet Doe, to essentially teach Jane Doe how to prostitute for Haynes. Furthermore, as discussed previously, circumstantial evidence showed that Sims, in concert with Haynes, was a source of fraudulent identification for Jane Doe. Thus, a rational trier of fact could certainly

---

[10] *See United States v. Phea*, 755 F.3d 255, 260 (5th Cir. 2015) (acknowledging that the lack of proper identification is some evidence that a jury can consider to conclude that a defendant recklessly disregarded a minor victim's age).

[11] *See* § 1591(a)(1).

conclude that Sims, at least tacitly, voluntarily participated in Jane Doe's trafficking with Mangis and Haynes.

*C. Admissibility of the Rap Videos*

Sims argues that rap videos admitted at trial were unfairly prejudicial and should have been excluded under Federal Rule of Evidence 403.[12] He contends that the lyrics to the music in the videos, which referred to women as "bitches" and "whores" and glorified the pimp lifestyle, including designer clothes, violence, weapons, money, drugs, jewelry, and "selling white bitches," were fictional and did not depict his real life. At trial, the Government played three rap videos by TSF—"7:30," "ALot of That," and "Remix"—and questioned witnesses about the identities of the people in the videos and the phrases and imagery used in them.

Under Rule 403, relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[13] A district court's ruling as to Rule 403 is reviewed "with an especially high level of deference to the district court, with reversal called for only rarely and only when there has been a clear abuse of discretion."[14] Courts apply Rule 403

---

[12] Although a specific objection based on Rule 403 was not made at trial, Sims did argue in pretrial briefing that he objected to the videos as prejudicial under Rule 403. Because the district court considered this evidentiary issue several times and requested briefing on the issue, the fact that Sims argued Rule 403 during the course of litigating this evidentiary issue apprised the judge of the Rule 403 objection. *See United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998). Thus, the Rule 403 issue is properly preserved for this appeal.

[13] FED. R. EVID. 403.

[14] *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008) (internal quotation marks and citation omitted).

No. 19-20833

sparingly,[15] and the rule is "not designed to even out the weight of the evidence."[16] "Rule 403's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."[17] "Any error in admitting such evidence is subject to harmless error review, and reversal is not required unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction."[18]

The admissibility of rap videos is an issue of first impression in our circuit. However, other circuits have analyzed the admissibility of rap videos under Rule 403. The general conclusion from courts that have considered this type of evidence is that explicit rap videos are probative and outweigh substantial prejudice when the defendant performs the song, describes events closely related to the crime charged, and the evidence is not cumulative.[19]

---

[15] *United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007).

[16] *Baker v. Canadian Nat'l / Ill. Cent. R.R.*, 536 F.3d 357, 369 (5th Cir. 2008) (internal quotation marks and citation omitted).

[17] *Id.* (internal quotation marks and citation omitted).

[18] *United States v. Williams*, 620 F.3d 483, 492 (5th Cir. 2010) (internal quotation marks and citation omitted).

[19] *See United States v. Belfast*, 611 F.3d 783, 793, 820 (11th Cir. 2010) (finding no abuse of discretion when defendant performed the song and described violence and killing that was pertinent to defendant's charges under the Torture Act); *United States v. Gamory*, 635 F.3d 480. 485–93 (11th Cir. 2011) (finding abuse of discretion in admitting videos performed by a non-defendant that corroborated the defendant's general lifestyle but were cumulative of other testimony and highly prejudicial due to the violence, profanity, and general lawlessness); *United States v. Stuckey*, 253 F. App'x 468, 473–82 (6th Cir. 2007) (unpublished) (finding no abuse of discretion in admission of rap lyrics that described killing snitches and Government witnesses "wrapping them in blankets" and "dumping their bodies in the street," which was exactly what the Government accused the defendant of doing); *United States v. Hankton*, 2016 WL 10950447 (E.D. La. 2016) (admitting one rap video but not another in a RICO murder in aid of racketeering case where the admissible

In this case, Sims performs in all three videos. Regarding the song, "7:30," Mangis testified that 7:30 was made shortly after Sims was arrested for sex trafficking a minor. In 7:30, one verse contains the lyrics "While you was trying to be a top draft pick," and then after a few lines says, "N[***a] trying to put the feds on me, but they won't put me with the dead homies." Mangis testified that these lyrics were about Haynes, the college football star trying to go to the NFL, who got Sims wrapped up in the present federal case. Given the timing of this song, the lyrics that describe the facts of this case, and the fact that Sims was in the video, we cannot say that the district court abused its discretion in admitting this video. This video connects Sims to Haynes in this particular case, and it depicts the use of firearms, which was highly relevant for the government's case on Count 3, the force charge.

In the video for "The Remix," Sims and Sauce Walka flash guns and money while rapping about violence and pimping, generally. Mangis testified that the song was about Sims's lifestyle. Similarly, "ALot of That" talks about "selling white bitches" and how rich and famous the performers are. The video depicts drug use and weapons. Although these videos speak only generally to the pimping lifestyle and are cumulative of testimony in that respect, the violence and weapons depicted in the videos are relevant to the force charge—that Sims sex trafficked by force, fraud, or coercion. We are not persuaded the district court abused its discretion in admitting these two videos. However, even if the district court erred in admitting these two

---

video described a shooting that was the subject of the charge and the inadmissible video only generally referenced that the crime was on the news).

videos, we are satisfied that the videos were not harmful to the defense, and any error was harmless.[20]

*D. The Leadership Role*

Sims argues that the district court erred in imposing a four-level enhancement for his leadership role in the offense under U.S.S.G. § 3B1.1(a). He contends that there was no evidence adduced at trial that he told anyone to recruit an underage minor to prostitute, that he directed Jane Doe's sexual conduct, that he directed Haynes to bring Jane Doe or any underage minor to Houston, or that he even spoke with Jane Doe. He contends further that statements in the PSR regarding his leadership role were not supported by trial testimony and were not reliable due to their inclusion in the PSR alone.

Sims preserved this issue by objecting to this enhancement before sentencing. The district court overruled the objection. Generally, the finding of an aggravating role is reviewed for clear error and "need only be supported by a preponderance of the evidence."[21]

"If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," his offense level is increased by four levels.[22] Factors relevant to the determination of whether a defendant qualifies as an organizer or leader under § 3B1.1(a) include: (1) the degree to which the defendant exercised decision-making authority; (2) the nature of the defendant's participation in the offense's commission; (3) the recruitment of accomplices; (4) the defendant's claim of

---

[20] *See U.S. v McCann*, 613 F.3d 486, 501 (5th Cir. 2010) ("[E]ven if the district court abused its discretion in admitting the text, any such error would have been harmless.").

[21] *United States v. Fillmore*, 889 F.3d 249, 255 (5th Cir. 2018).

[22] § 3B1.1(a).

a right to a larger share of the crime's fruits; (5) the degree of the defendant's participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority the defendant exercised over others.[23] A defendant's role in the criminal activity "may be deduced inferentially from available facts."[24]

Similar evidence that supports the convictions, as well as additional statements in the PSR, support the application of § 3B1.1(a) on clear-error review. Trial testimony regarding Sims's directive to Mangis to find a "white girl" for Haynes and Sims's directive to Janet Doe to allow Jane Doe to stay with her to help her become a prostitute and make her more comfortable and learn to earn money support the PSR's findings regarding Sims's leadership role and his decision-making authority and participation in planning.[25] Uncontradicted facts provided in the PSR, as well as trial testimony itself, indicate that, at a minimum, Sims had a leadership role over Jane Doe, as described above; Haynes, who was being encouraged by Sims to become a pimp and who was being taught about pimping by Sims; Mangis, who was Sims's girlfriend and employee; Deszmann Broussard (known as "Lucciani") who drove Haynes to retrieve Jane Doe; and Janet Doe and Cassandra Cabrales, who were sex workers for Sims.[26] In light of the foregoing, trial testimony and the PSR support the § 3B1.1 enhancement by

---

[23] § 3B1.1, comment. (n.4).

[24] *United States v. Guzman-Reyes*, 853 F.3d 260, 265 (5th Cir. 2017) (internal quotation marks and citation omitted).

[25] § 3B1.1, comment. (n.4).

[26] § 3B1.1, comment. (n.4).

No. 19-20833

a preponderance of the evidence, and thus Sims has not demonstrated clear error.[27]

## III. CONCLUSION

For the above reasons, we AFFIRM the conviction and sentence.

---

[27] *See Fillmore*, 889 F.3d at 255.