NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2845
_____

UNITED STATES OF AMERICA

v.

JAMES W. JOHNSON,
                                    Appellants
_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 2-17-cr-0243-001)
District Judge:  Honorable Mark R. Hornak
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 19, 2024

Before:  JORDAN, BIBAS, and AMBRO, *Circuit Judges*

(Filed February 14, 2024)
_____

OPINION[*]
_____

_____

    [*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

James Johnson was convicted of gun and drug charges. He requests a new trial, arguing that the District Court erred by admitting excerpts from his rap music videos and by failing to remove allegedly racist individuals from the jury pool. We will affirm.

## I.    BACKGROUND

### A.    Johnson's Arrest

On December 30, 2016, Detective Robert Berberich of the Pittsburgh Bureau of Police used a pair of binoculars to witness a drug sale at 330 Renova Street in Pittsburgh's Hazelwood neighborhood. Berberich and his companion followed the buyer, James Mitchell, and stopped his car. They found a bag of crack cocaine on the floor of the car. Berberich showed Mitchell a picture of the defendant, James Johnson. Having seen Johnson on rap videos, Berberich believed with "100 percent" certainty that Johnson was the seller in the transaction that Berberich had just seen. (App. at 1012.)

Law enforcement obtained a warrant, and three days later, on January 2, 2017, a SWAT team stormed 330 Renova Street. The team found Johnson leaving the porch area and detained him. The house contained fentanyl, crack cocaine, powder cocaine, methamphetamine, baggies, a digital scale, cutting powder (Inositol powder and baking soda), a loaded pistol, and two loaded extended magazines. Johnson had on his person $946 in cash, keys to the house, and two cell phones, one of which had received calls from Mitchell on December 30 and contained text messages about the sale of drugs. The SWAT officers encountered another individual, Whitney Fennell. Berberich questioned him and let him go.

2

**B.    Pre-Trial**

Johnson was eventually charged in federal court.  A superseding indictment accused him of distributing fentanyl (Count 1) and possessing with intent to distribute crack cocaine, powder cocaine, fentanyl and methamphetamine (Count 2), both counts in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  He was also charged with possessing a firearm in furtherance of a drug crime (Count 3), in violation of 18 U.S.C. § 924(c)(1)(A)(i), and with being a felon in possession of a gun (Count 4), in violation of 18 U.S.C. § 922(g)(1).  [

### 1.    The District Court Admits Excerpts and Still Images from Johnson's Rap Music Videos

Before trial, the government wanted to introduce into evidence the rap videos featuring Johnson, in which he states that he sells drugs and owns guns.  The government argued that the videos were "admissions" that corresponded "to the firearm and magazines found during the search" and were "tie[d] directly to the [drug] evidence that law enforcement found during the search of the Renova Street residence."  (App. at 107.) Johnson filed motions in limine to keep the videos out of evidence.  Citing Federal Rules of Evidence 401 and 403, he argued that the videos were "highly prejudicial," and of "no probative value."  (App. at 89.)  He also asserted that they were offered to show a propensity for crime and were thus inadmissible under Rule 404(b).  The government proposed a middle ground – "the admission of excerpts and still images from the videos." (App. at 110.)

The District Court found most of the excerpts and stills inadmissible under Federal Rules of Evidence 403 and 404. For example, references to prior prison sentences and an affinity for firearms ("we keep them pistols," "loaded like a soldier," "guns that I like to act the fool with," and "I got a big ass gun with a long ass clip") were held to be propensity evidence and inadmissible under Rule 404(b). (App. at 19-21.)

However, the Court admitted a number of stills and three short video excerpts. In the first two excerpts, Johnson says, "Whipping chickens in the kitchen, I got more to sell" and "[A]ll my guns got a drum or a stick." (App. at 16.) On the condition that the government would first provide evidence that "chickens" and "stick" refer to "conduct charged" (i.e., drugs and an extended magazine, respectively), the Court admitted the video clips because the rap videos had been uploaded to the internet "temporally proximate to the crimes" and the "subject matter is not tenuously connected to the charged conduct." (App. at 16.) In the third excerpt, Johnson says, "[L]ike they don't know where Renova is." (App. at 15.) The District Court admitted that clip because it was "relevant to the contested issue of [Johnson]'s association with the house on Renova Street." (*Id.*)

### 2. The District Court Strikes Some Prospective Jurors, but Not Others, for Their Views on Race

As requested by Johnson, the District Court required prospective jurors to answer a one-page questionnaire probing their attitudes on race. Prospective Juror No. 2, recognizing her "inherent bias," said she would be less "careful in [her] thinking" if the defendant were white and provide relatively more scrutiny to the evidence because the

4

defendant and his attorneys were black. (App. at 284-85, 287.) The District Court granted the government's request to strike Prospective Juror No. 2 for cause, reasoning that while her recognizing and addressing her implicit bias was "not … problematic at all," she nevertheless might impute "those biases to others[,]" which "would in effect be imposing an additional burden in this case that the law does not apply." (App. at 447-48.) Prospective Juror No. 16 expressed support for the decriminalization of drugs and said he would make a decision "that [he] feel[s] is … morally correct and legally correct[.]" (App. at 432-34, 436.) When asked if there was a difference between the two, the juror said, "That is a difficult one to answer," and explained that he would evaluate whether, even if the defendant is legally guilty of a crime, he felt "that the charge that is being pressed [is] of a higher level than … is necessary." (App. at 437.) The District Court granted the government's request to strike Prospective Juror No. 16 for cause because, when the Court explained "the responsibility of all jurors to abide by the evidence that's presented in court and the instructions," the juror "spoke of reaching a conclusion that was both morally and legally correct" and because his preconceptions about race and criminal reform "would always be with him." (App. at 445-46.)

Prospective Jurors Nos. 4 and 44 answered that they "believe[d] that African American men are more likely than other people to engage in violence or criminal conduct, or to be involved in any way with guns or drugs[.]" (App. at 545, 688-89.) When probed, Prospective Juror No. 4 agreed that he would not assume upon meeting "an African American male" that there was "any different likelihood that they've been involved unlawfully with guns or drugs[,]" but clarified that "[i]t just seems like some of

5

the areas that I do work in, and that tend[] to be more of a[n] African American community, … it seems like that's what I've seen[.]" (App. at 547, 552-53.) Prospective Juror No. 44 explained that he thought that "more gangs [were] more African American" based on conversations he had with retired police officers and what he saw on the news. (App. at 689-90.) He also agreed that he did not believe "it's more likely" that his black friends "would be involved with criminal conduct, with drugs or guns, because they're African American[.]" (App. at 695-96.) The District Court denied Johnson's motions to strike Prospective Jurors Nos. 4 and 44 for cause because they did not believe black men had a "propensity" or "predisposition" for violence but were "reporting experiences that [they've] had" or "what [they] observed on the news[.]" (App. at 554-55, 699.) Johnson then struck Prospective Jurors Nos. 4 and 44 using two of his peremptory strikes, and they were not seated on the jury or as alternates.

## C. Trial

During the five-day trial, Johnson, through counsel, argued that although Mitchell bought drugs on December 30, the government could not prove beyond a reasonable doubt that he – Johnson – was the seller and that he owned the drugs and guns at issue. He argued that Detective Berberich was predisposed to identify him on December 30, and so failed to investigate Fennell, the other person found at the residence during the raid. He also pressed Berberich on his reluctance to enter the 330 Renova Street property immediately: "[I]f you're seeing what you believe to be a drug transaction, doesn't it make sense that you would want to collect or capture evidence on both sides of that transaction?" (App. at 873.) Johnson continued pressing that point. In response, the

6

government requested, and the District Court granted, that more excerpts be admitted in evidence to explain why Berberich was afraid to storm the house right away and question Johnson. Berberich testified that he did not try to make an immediate arrest because he had watched a rap video in which Johnson bragged of being armed and, by implication, of being dangerous.

The jury found Johnson guilty on all counts, and the Court sentenced him to 152 months' imprisonment and six years' supervised release. Johnson timely appealed, requesting a new trial on the basis that the admitted rap music video excerpts, lyrics, and stills were prohibited propensity evidence and that the District Court failed to strike racist individuals from the jury pool.

## II.  DISCUSSION[1]

### A.  The Rap Video Excerpts[2]

Federal Rule of Evidence 404(b)(1) prohibits the admission of evidence concerning "any other crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." The "rule reflects the longstanding concern that evidence of prior bad acts, when offered

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

[2] "We review a district court's evidentiary rulings for an abuse of discretion," *United States v. Caldwell*, 760 F.3d 267, 274 (3d Cir. 2014), including its "application of Rule 404(b)[.]" *United States v. Fattah*, 914 F.3d 112, 175 (3d Cir. 2019). "We exercise plenary review, however, of [the district court's] rulings to the extent they are based on a legal interpretation of the Federal Rules of Evidence. This includes plenary review over whether evidence falls within the scope of Rule 404(b)." *Caldwell*, 760 F.3d at 274 (internal quotation marks and citations omitted).

7

only to show the defendant's propensity to commit the charged crime," will "prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge." *United States v. Caldwell*, 760 F.3d 267, 275 (3d Cir. 2014). Rule 404(b) does not, however, apply when considering evidence related to the crimes charged. *United States v. Green*, 617 F.3d 233, 240-41 (3d Cir. 2010). While "[e]xtrinsic evidence must be analyzed under Rule 404(b)[,] intrinsic evidence need not be." *Id.* at 245.

"[E]vidence is intrinsic if it directly proves the charged offense" or if the uncharged conduct "facilitate[d] the commission of the charged crime." *Id.* at 248-49 (internal quotation marks omitted). "[T]he nature and scope of the evidence able to be deemed intrinsic will vary with the charged offense." *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020). Here, the government had the burden to prove that Johnson was indeed the drug dealer on December 30 at 330 Renova Street and that he had "constructive possession" of the guns and drugs found there during the raid. But "mere proximity to the drug, or mere presence on the property where it is located[,] … is insufficient to support a finding of possession." *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993). Evidence tying the defendant to the contraband is needed, and such evidence, if it exists, is intrinsic to the charges. Even when evidence is extrinsic, it can be admitted under Rule 404(b) if it is "(1) offered for a proper non-propensity purpose that is at issue in the case; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 such that its probative value is not outweighed by any inherent

8

danger of unfair prejudice; and (4) accompanied by a limiting instruction, if requested." *Caldwell*, 760 F.3d at 277-78.

Johnson argues that the rap excerpts do not "directly prove[]" that he sold drugs on December 30 or owned the drugs and guns found during the raid on 330 Renova Street, that the videos can instead only be understood as propensity evidence: "Johnson sings about possessing guns and drugs, so jurors can infer he … acted in conformity with that character[.]" (Opening Br. at 16; Reply Br. at 11.) The government responds that the statements "whipping chickens in the kitchen, I got more to sell," "all my guns got a drum and a stick," and "like they don't know where Renova is" are all intrinsic evidence, proving that Johnson owned the guns and drugs recovered during the search of the Renova Street property, so there is no need to resort to Rule 404(b). As for a proffered statement indicating that Johnson was armed and dangerous, the government says it satisfied the four-part test for admitting evidence under Rule 404(b). Its arguments prevail.

### 1. "Whipping Chickens in the Kitchen, I Got More to Sell" and "All My Guns Got a Drum and a Stick"

At trial, the government presented evidence that the rap lyric "whipping chickens in the kitchen" refers to cooking kilos of powder cocaine and a cutting agent into crack cocaine and that "a drum and a stick" allude to a firearm magazine and an extended magazine, respectively. The music video was uploaded to the internet less than two months before the charged conduct. Hence, the government argues that those lyrics are "intrinsic evidence" offered and admitted to "directly prove[]" along with Detective

9

Berberich's testimony and the incriminating text messages found on Johnson's phone, that Johnson sold drugs on December 30 and owned the guns and drugs found at 330 Renova Street.[3]

We agree. If someone tells you "I have guns and drugs," and then you find guns and drugs in his house, his statement is direct proof that the guns and drugs are in fact his.[4] That he says it in rhyme does not change that. How a jury chooses to weigh that evidence is another matter, but the evidence itself is, analytically, intrinsic. Johnson contends that rap is an often hyperbolic or fictional art form. While not all art is necessarily admissible as autobiography, the District Court here acted within its discretion in leaving that question for the jury. *Cf. United States v. Sims*, 11 F.4th 315, 323 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 827 (2022) ("[E]xplicit rap videos are probative … when the defendant performs the song, describes events closely related to

---

[3] Johnson contends that the government "did not offer and the court did not admit" the rap music video excerpts "as 'intrinsic' evidence." (Opening Br. at 13 n.4.) He is mistaken. The government wanted to admit the excerpts as "admissions" that were "specific" correspondents "to the firearm and magazines found during the search" and "tie[d] directly to the [drug] evidence that law enforcement found during the search of the Renova Street residence." (App. at 107.) Then, the District Court admitted the evidence because it might be "a reference to the conduct charged in this case." (App. at 16.) Finally, the government used the excerpts to prove that Johnson owned the guns and drugs. Thus, it was clearly proffered and accepted as intrinsic evidence.

[4] Johnson claims no kilos were recovered, that the cutting agent was not definitively present in the crack cocaine, and that no drum-style magazines were recovered, nor would they work with the recovered firearm. All of those objections go to the weight more than the admissibility of the evidence. Moreover, Johnson did not make those arguments at trial. They are thus forfeited. *See United States v. Joseph*, 730 F.3d 336, 337 (3d Cir. 2013) ("[F]or parties to preserve an argument for appeal, they must have raised the same argument in the District Court[.]" (emphasis omitted)).

10

the crime charged, and the evidence is not cumulative."); (App. at 158 (District Court positing that the jury can decide whether rap music is autobiographical: "[I]f Marshall Mathers came in and … [sang] about Eight Mile Road, you can say, 'Well, that sounds pretty autobiographical.'")).

## 2. "Like They Don't Know Where Renova Is"

The District Court also admitted the excerpt in which Johnson says, "like they don't know where Renova is," ruling that it was "relevant to the contested issue of the Defendant's association with the house on Renova Street[.]" (App. at 15.) We evaluate that decision for abuse of discretion. *Caldwell*, 760 F.3d at 274. Johnson argues that his connection to 330 Renova Street had been established in other ways, so the video excerpt was cumulative, and that rap music inflamed the jury because people link it with crime and gangs. At trial, Johnson argued that he had minimal connection to 330 Renova. He claimed that he did not live there, that it was frequented by others, and that it "was a vacant property in a neighborhood that, unfortunately, had a high[] rate of break-ins[.]" (App. at 820.) Yet, Johnson decided to give Renova Street a featured part in his rap video, and that fact tended to rebut his argument that his connection to the house was tenuous. The lyric served as non-propensity evidence, linking Johnson to 330 Renova Street and the drugs and guns inside. Thus, the District Court did not abuse its discretion in admitting the excerpt.

## 3. Excerpt Demonstrating Johnson's Dangerousness

Midway through trial, the District Court permitted the government to admit into evidence rap video lyrics that indicated Johnson's dangerousness. In particular, the

11

government was allowed to ask Berberich "what it was in the videos that informed his decision[]" not to arrest Johnson on December 30, an issue Johnson had made relevant through his questioning of Berberich. (App. at 1146.)

The Court applied our four-part test for admitting evidence under Rule 404(b). *Green*, 617 F.3d at 249; *Caldwell*, 760 F.3d at 277-78. First, the rap excerpt had "an acceptable, non-propensity purpose" that was "relevant to[] the prosecution." *Caldwell*, 760 F.3d at 278. Second, the excerpt was relevant because it tended to make the justification Berberich gave for his hesitation "more probable … than it would [have] been] without the evidence." *Green*, 617 F.3d at 251 (quoting Fed. R. Evid. 401). Third, the Court determined – and we do not believe it abused its discretion in doing so – that a reference from the video discussing violence was not unfairly prejudicial when considering the probative value of the testimony.[5] *Id.* at 251-52. Finally, the District Court provided a limiting instruction, minimizing "any risk of unfair prejudice[.]" *Id.* at 252.

Johnson says that the government inappropriately relied "on Berberich's interpretation of the rap-music-evidence as admissions to 'being a gun-toting drug dealer'

---

[5] At first, the government and Berberich referenced Johnson's lyric, "a big ass gun with a long ass clip." (App. at 1190-93.) Then, Johnson requested, and the Court agreed, to strike the exact reference because the jury might be misled into believing that Johnson was referencing the gun found on January 2, which was impossible, since the video was uploaded before Johnson obtained the gun. Johnson argues that "the damage had been done" once the jury heard the precise lyric. (Opening Br. at 30.) That is not so. The instruction granting the motion to strike is "presumed to have cured any potential prejudice[,]" *United States v. Riley*, 621 F.3d 312, 337 (3d Cir. 2010), and, in any event, allowing the more explicit lyric into evidence would not have been error.

12

and 'commi[tting] violence in furtherance of drug trafficking,'" during closing arguments. (Opening Br. at 32 (quoting App. at 1899-1900, 1906).) But Johnson did not object at trial, nor does he argue on appeal that the government stretched the Court's permission. He makes no argument of prosecutorial misconduct at all. His contention is that the Court erred in admitting the evidence, but we see no abuse of discretion in the decision to admit it to explain Berberich's safety concerns.

Thus, we will deny Johnson's request for a new trial on the basis that his rap music video excerpts, lyrics, and stills were non-admissible propensity evidence.

### B. The Prospective Jurors[6]

Johnson argues that the District Court abused its discretion by striking Prospective Juror Nos. 2 and 16 for cause and refusing to strike Prospective Juror Nos. 4 and 44, which prompted him to strike them peremptorily. He argues that "[t]he erroneous for-cause exclusion of these jurors denied [him] his right to a fair trial by an impartial jury and mandates reversal." (Opening Br. at 42.) Not so.

### 1. Prospective Juror Nos. 2 and 16

A prospective juror professes actual bias when the District Court can infer "that the person will not act with entire impartiality." *United States v. Mitchell*, 690 F.3d 137, 142 (3d Cir. 2012). "District courts possess broad discretion in excusing prospective

---

[6] "Our review of a ruling on a motion to strike a juror for cause is for manifest error – a most deferential standard. … [J]ury selection is 'particularly within the province of the trial judge[,]' and … 'second-guessing the trial judge's estimation of a juror's impartiality'" is seldom warranted. *United States v. Nasir*, 17 F.4th 459, 467 (3d Cir. 2021) (quoting *Skilling v. United States*, 561 U.S. 358, 396 (2010)).

jurors for cause on the basis of actual bias … because [they] possess[] a superior capacity to observe the demeanor of prospective jurors and to assess their credibility." *Id.*

The District Court struck Prospective Juror No. 2 out of concern that her admitted concern over implicit bias might "impos[e] an additional burden … that the law does not apply." (App. at 448.) Prospective Juror No. 2 indicated she would provide more scrutiny to the evidence because the defendant and his attorneys were black, which would violate the instruction to jurors to "not be influenced by any person's race, color, religion, national ancestry, gender, occupation, economic circumstances, or position in life or in the community." (App. at 1835.) The Court recognized "this is a very close call" but found that, despite her good faith, Prospective Juror No. 2 would be "extra cautio[us]" about inherent biases based on race, which would affect her impartiality in assessing witness testimony and attorney arguments. (App. at 448.) There is no manifest error in that conclusion.

The Court struck Prospective Juror No. 16 because "he spoke of reaching a conclusion that was both morally and legally correct" and because his preconceptions about race and criminal reform "would always be with him." (App. at 445-46.) "Good cause exists where a juror refuses to apply the law[.]" *United States v. Fattah*, 914 F.3d 112, 149 (3d Cir. 2019). The District Court thus did not manifestly err.

### 2. Prospective Juror Nos. 4 and 44

Although Prospective Juror Nos. 4 and 44 answered "yes" to the question, "[D]o you believe that African American men are more likely than other people to engage in violence or criminal conduct[,] or [to] be involved in any way with guns or drugs?" (App.

14

at 545, 688-89,) the District Court denied Johnson's motions to strike them for cause because they did not believe black men had a "propensity" or "predisposition" for violence but were "reporting experiences that [they've] had" or "what [they] observed on the news[.]" (App. at 554, 699.) Those prospective jurors were eventually struck.

"So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean" the defendant's right to an impartial jury "was violated." *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988). Although Johnson now claims that he would have used the peremptory strike against Prospective Juror No. 193, "who believed police witnesses are more likely honest[,]" (Opening Br. at 68; *see also* Answering Br. at 37 n.10,) Johnson did not challenge that prospective juror for cause at the District Court. We are accordingly unpersuaded that the Court's ruling "result[ed] in the seating of any juror who should have been dismissed for cause[,]" so Johnson is not entitled to a new trial. *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000).[7]

---

[7] In *Martinez-Salazar*, the Supreme Court held that a criminal defendant's right to an impartial jury or to due process was not violated when a district court erroneously failed to strike a juror for cause, requiring the defendant to do so via peremptory strike. *United States v. Martinez-Salazar*, 528 U.S. 304, 317 (2000). Johnson claims that he still has a claim under the Equal Protection Clause of the Fourteenth Amendment. But the Equal Protection Clause only bars "a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race[,]" which did not occur here. *Id.* at 315.

Johnson then relies on *Peña-Rodriguez v. Colorado*, 580 U.S. 206 (2017), to contend that trials with racial bias must be treated with more caution than is called for by *Martinez-Salazar*. But Johnson provides no authority to demonstrate that *Peña-Rodriguez* cabins *Martinez-Salazar*. On the contrary, *Peña-Rodriguez* is "narrow" and applies only "where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant[.]" *United States v. Nucera*,

**III.   CONCLUSION**

For the foregoing reasons, we will affirm.

---

67 F.4th 146, 168 (3d Cir.) (emphasis omitted), *cert. denied*, 144 S. Ct. 366 (2023). Thus, *Martinez-Salazar* applies in this case, and, because no biased jurors sat, Johnson's right to an impartial jury was not compromised.

16